**UNITED STATES of America,
Appellee,**

v.

**Thomas E. CAPOCCI, Defendant,
Appellant.**

**No. 7608.**

United States Court of Appeals,
First Circuit.

Oct. 13, 1970.

L. Johnson Callas, Boston, Mass., by appointment of the Court, for appellant.

Wayne B. Hollingsworth, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on the brief, for appellee.

**156**

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge

After a trial by jury, the defendant Capocci was convicted of passing and uttering a counterfeit $10 Federal Reserve Note with intent to defraud, in violation of 18 U.S.C. § 472 (1964).

The defendant introduced no evidence. The government's evidence showed that on December 11, 1969, Capocci and another man went to the sales booth of one Lorraine Watkins in Filene's Department Store in Boston. Capocci bought two small dolls. As Miss Watkins held out her hand for payment, her attention was momentarily diverted and a $20 Federal Reserve Note was placed in it. She did not see who placed the note in her hand, but Capocci and his companion were the only persons at the end of the counter where she received the money. The other man had his back to Miss Watkins as she turned away, and was in the same position when she turned back to Capocci. On these facts the jury could reasonably infer that it was Capocci who put the bill into her hands.

As soon as Miss Watkins received the note, she suspected it of being counterfeit, but did not question Capocci because she was nervous. She checked the bill against a list of counterfeit bill numbers and found the serial number of the counterfeit note on her list thereby validating her suspicion. She gave Capocci $17.94 change and the two dolls he had purchased. As he and his companion left, she heard Capocci say that he was going to the men's department, while the other man said he was going back to his car.

Approximately ten minutes after leaving Miss Watkins, Capocci passed a counterfeit $10 Federal Reserve Note in the men's department, approximately seventy feet from Miss Watkins' booth. It was stipulated that immediately after Mrs. Polack, who received this bill, looked at it, Capocci said to her, "What is the matter? Is something wrong with that? If you don't like it I have a couple of more." The store security officer was called to the men's department, spoke to Capocci and then asked him if he had given it to Mrs. Polack. Capocci said, "Yes I did, if there is something wrong with it I will give you another one." The security officer then asked Capocci to accompany him to the security office. While there Capocci was identified by Miss Watkins as having been in her department a short time earlier. Special Agent Brehm of the U. S. Secret Service advised defendant of his rights and questioned him. Capocci admitted to Brehm that he passed the counterfeit $10 note but denied knowing it was counterfeit. Also, he denied having seen Miss Watkins before or being in her department, or having been in the store with anyone else.

Defendant would have us rule *inter alia* that the trial court committed reversible error in not granting defendant's motion for judgment of acquittal at the close of the government's case. In Paz v. United States, 387 F.2d 428 (5th Cir. 1967), there was such a reversal on analogous facts. In that case, defendant was driving in a car with another man and paid for $2.00 worth of gas with a $20 bill. The bill was correctly suspected to be counterfeit, and when the pair drove off, the station attendant notified the local sheriff. Paz and his companion were apprehended in another county. Paz had $470 on him, including another bogus $20 bill. The court reversed a conviction under 18 U.S.C. § 472 on these facts, holding that the requisite knowledge was not shown. In doing so, the court distinguished Bell v. United States, 100 F.2d 474 (5th Cir. 1938). In that case the defendant was convicted of passing three bogus bills for small gasoline purchases on the same evening; his defense was that he was not present at the passings.

We think that the instant case more clearly resembles *Bell* than *Paz,* and therefore that the motion for acquittal was properly denied. Capocci made two attempts at passing bogus bills, according to the testimony, and he denied hav-

ing made the first, an exculpatory statement clearly admissible. Defendant argues that his denial with regard to the first passing cannot be construed as exculpatory, because it did not relate to the crime charged. But he ignores the fact that the passing of the $20 bill is relevant to the question of intent. In our opinion, the two passings, together with the denial and the statements made to Mrs. Polack and the security officer, were enough to allow the jury to find intent beyond a reasonable doubt.

When Capocci left her presence, Miss Watkins took the $20 bill to her substitute supervisor. Due to the hearsay rule, Miss Watkins was not permitted to say what she said to the substitute supervisor nor what the latter said to her with regard to the disposition of the bill. All that one can be deemed to know is that ten to fifteen minutes later Miss Watkins was called to the security office. There Secret Service Agent Brehm asked her to initial the note. She did so.

██ When the bill was first admitted for identification, Miss Watkins said that she could identify it:

"Q. Now, Miss Watkins, I show you Government's Exhibit No. 2 for Identification and ask if you can identify this particular [$20] bill?

A. Yes. That is my initials.

Q. Where have you seen that bill before?

A. Upstairs in the security office.

Q. Is this the bill that was given to you on December 11, 1969?

A. Yes.

Q. And is this the same bill that was given to you by the defendant?

A. Yes."

On cross-examination, however, she was asked whether she knew at the time she initialed the note that it was the one given to her by the defendant.

"Q. So you really didn't know at the time that you initialed this [$20 bill] that this was the note that had been given to you by somebody in your department?

A. No, not really." [1]

The substitute supervisor was not a witness. Neither Brehm nor any other witness testified from whom Brehm had obtained the $20 bill.

Such an admission, made in the interest of extreme caution in the course of vigorous cross-examination, does not compel the bill's exclusion. The shortness of time lapsing between Miss Watkins' delivery of the bill to the substitute supervisor and her acknowledgment of its similarity by initialing the bill subsequently introduced, the fact that the Security Officer knew that she had turned in a counterfeit bill, and the absence of any hint of mishandling could be found to eliminate with reasonable probability the possibility of misidentification. Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767, 770 (1969).[2] Even were there not sufficient tracing, we fail to see substantial prejudice. Fed.R.Crim.P. 52(a). Miss Watkins had made it clear that she had seen counterfeit bills before, that the bill she turned in was counterfeit, and that she relied not only upon her general impression but on conformance of its serial number with an identifying list.

---

1. Counsel for defendant moved immediately to have the note stricken. The motion was denied. The note was later admitted into evidence and circulated among the jury over defense counsel's protests. The jury took the bills into the jury room.

2. The "reasonable probability" test announced in *Gass* was directed principally to the problem of adulteration of evidence

by uncalled witnesses. The court had conclusive identification of the evidence before it. However, the court also indicated use of the test for identification cases. We think it is an appropriate test in the instant case, where only the most technical construction of the chain-of-custody rules could find fault with the district court's acceptance of the bills into evidence.

Defendant argues error in the failure of the trial court to direct a judgment of acquittal at the close of the government's opening statement, on the grounds that the statement did not show that the government could prove scienter. This court has left open the question as to whether such a judgment can be granted *after* the opening statement. In re United States, 286 F.2d 556 (1st Cir. 1961), rev'd on other grounds sub nom. Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). But Fed.R.Crim.P. 29(a) was not meant to change the common law. Notes of Advisory Committee, Note to Rule 29(a); 71 Yale L.J. 171, 173 (1961). Such judgment was clearly allowed prior to the rules. E. g., United States v. Dietrich, 126 F. 676 (C.C.D.Neb.1904) (Van Devanter, J.), and cases cited therein; *see also* In re United States, *supra*, 286 F.2d at 565–566 (Aldrich, J., concurring). However, the granting of such a motion is purely discretionary, particularly because a judgment of acquittal is not reversible. Fong Foo v. United States, supra. As there was some indication in the opening statement as to how the government intended to prove scienter, the trial judge was within his discretion in refusing to grant the motion. United States v. Greenberg, 268 F.2d 120, 123 (2d Cir. 1959).

Defendant also argues that the trial court erred in allowing the jury to find that the defendant knowingly and voluntarily waived his rights to keep silent and to have counsel. The jury had abundant evidence to find that defendant's waiver was voluntary and knowing. The government agents testified that they read the warnings to defendant, and that he read the warnings. In each instance, the agents asked defendant if he understood the warnings and he said that he did. In these circumstances there was no necessity that he sign a paper waiving his rights.

Defendant now argues that because the jury was not told the actual wording of the warnings, they could not find a knowing, voluntary waiver by defendant.

But counsel for defendant was asked whether he objected to the form of the warnings given and he admitted that they were entirely proper. We think that in admitting no dispute on the matter, defendant waived any right to dispute it here.

Affirmed.