STATE OF HAWAII, Plaintiff-Appellee, *v.* KENNETH ALLEN SMITH, Defendant-Appellant and TRACY KAIKEALOHA PETERS, Defendant

NO. 7026

DECEMBER 22, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, JJ., AND RETIRED JUSTICE MARUMOTO ASSIGNED BY REASON OF VACANCY

*Per Curiam.* Defendant appellant, Kenneth Allen Smith, was convicted of murder under the provisions of HRS § 707-701 (1976).[1] He appeals from the judgment and sentence of the trial court.

The only issue which merits our consideration is whether the trial court erred in denying the defendant's motion for judgment of acquittal pursuant to H.R.P.P. Rule 29(a). In this case the unjustifiable shooting death of the victim is not disputed. The defendant, however, challenges the sufficiency of the evidence connecting him with the corpus delicti.

The victim, James Veal, was a military policeman on guard duty on July 12, 1977, at the entrance to the United States Army's recrea-

---

[1] HRS § 707-701 provides in pertinent part:

[A] person commits the offense of murder if he intentionally or knowingly causes the death of another person.

tion center at Waianae. Two other military policemen, Philip Sulzbach and Ronald Radovanic, were also on duty in the post building about 25 yards away on the makai-Kaena side of the guard shack where the victim was standing guard. The principal public thoroughfare leading to the center is Army Street which runs through the adjoining residential area. The guard shack is located in the middle of the entrance to the center. Branching off Army Street at this entrance is a dirt road running in the Honolulu direction along the fence bordering the military establishment.

At approximately 1:45 a.m. two shotgun blasts were heard. MP Sulzbach testified that he heard the victim yell "No" and that this was followed by the shotgun blasts. He looked out and saw a man running away in the Honolulu direction along the fence on the dirt road. He and Radovanic immediately rushed out and found the victim lying on the ground. The victim had been shot in the chest. Sulzbach was unable to make positive identification of the fleeing individual he saw because of the poor lighting conditions.

Frank Damas who lived on Army Street about 25 yards away from the guard shack also heard someone say "No" and then heard the gunshots. Looking out of his bedroom window, he saw two people running on the dirt road away from the center entrance.

Steven Cordeiro also heard the gunshots. He lived approximately 50 yards from the guard shack, adjacent to the dirt road. Looking out of his kitchen window after hearing the gunshots, he saw two people running in the Honolulu direction on the dirt road.

None of the witnesses observed the actual shooting which resulted in the victim's death, and none could positively identify the defendant as one of the two individuals seen fleeing the scene. The record shows, however, that in the early morning hours of the day of the shooting, the defendant and one Tracy Peters arrived at the Pokai Bay Cabana apartment of the defendant's sister, Emily Smith. She testified that she lived "not too far away" from the scene of the shooting. Miss Smith testified that when both men arrived at her home, the defendant immediately went to bed. Peters was carrying a long object that was wrapped in plastic or with cloth and this he placed in Miss Smith's car trunk with her permission, but without her knowledge of the contents of the package. Emily Smith did not learn about the shooting until that afternoon. Later Miss Smith removed the wrapped object from her car, unwrapped it, and dis-

covered a shotgun and eight shotgun shells. She took these articles to the rubbish dump and hid them. Several days later, however, at the request of the police she turned the firearm and the ammunition over to them.

Meanwhile, a shotgun casing had been recovered by the police at the rear of the defendant's father's house where the defendant was then residing. Police investigators had earlier recovered a shotgun casing and shotgun wadding at the scene of the shooting. They also recovered shotgun pellets at the scene and from the victim's body. The shotgun was thereafter test fired with the ammunition obtained from Emily Smith. Expert police testimony revealed that the casing from the test firing, the casing found behind the defendant's father's house, and the casing found at the scene were all fired from the shotgun that Tracy Peters had been carrying when he and the defendant went to Emily Smith's apartment some time after the shooting. The pellets from the test firing were found to be of the same size and brand as those recovered at the scene and from the victim's body. The wadding obtained after the test firing was also similar to the wadding found at the scene.

On these facts,[2] the defendant asks this court to hold that there was insufficient evidence to connect him with the fatal shooting and that the trial court therefore erred in denying his motion for judgment of acquittal. We disagree.

The test on a motion for judgment of acquittal is "whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind may fairly conclude guilt beyond a reasonable doubt." *State v. Rocker,* 52 Haw. 336, 346, 475 P.2d 684, 690 (1970) *quoting Curley v. United States,* 160 F.2d 229, 232 (D.C. Cir. 1947), *cert. denied,* 331 U.S. 837 (1947). Viewing the evidence in the light most favorable to the prosecution, and applying this standard to the defendant's motion, we find that the trial court did not err in denying it.

---

[2] For the purposes of our review as to the sufficiency of the evidence, the statements allegedly given to the police by the defendant's brother, Ricky Smith, which tended to incriminate the defendant, are not being considered by this court. These statements were admitted for impeachment purposes and not as substantive evidence. Compare, Hawaii Rules of Evidence, Rule 802.1 as promulgated by Act 164, 1980 Hawaii Sess. Laws, effective January 1, 1981.

It is well settled that evidence, either direct or circumstantial, may support a conviction, *State v. Murphy*, 59 Haw. 1, 575 P.2d 448 (1978); *Robinson v. State*, 18 Md.App. 678, 308 A.2d 734 (1973). No greater degree of certainty is required where a conviction is based solely on circumstantial evidence than where the evidence is direct; in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused. *Robinson v. State. See State v. Murphy, supra.* From the evidence adduced in this case, the jury could have found beyond a reasonable doubt, as it obviously did, that the defendant was one of the two individuals fleeing from the scene of the shooting and that both were involved in the commission of the offense.

Either the defendant or Peters fired the fatal shots, and the facts clearly negate any probability that the defendant was simply an innocent bystander in the ruthless killing of James Veal. The defendant and Peters were clearly friends, and neither of them lived anywhere near the scene of the crime. Their presence in the area in the early morning hours, for no apparent lawful purpose, was therefore a highly suspicious circumstance and was wholly unexplained. From the facts the jury could have readily inferred that both went together, *armed* and bent on mischief, to the military recreation center and that they were together throughout the entire criminal episode. One or the other was carrying the shotgun. The victim was thereafter heard by witnesses to say "No" and this plea was followed by two blasts from the shotgun. The facts readily support an inference that both the defendant and Peters then fled from the scene together since they arrived at the defendant's sister's house together. The inference that they still had the shotgun with them as they fled is clearly supported by the fact that Peters was carrying the murder weapon when they arrived. The defendant immediately went to bed while Peters stowed the firearm in the defendant's sister's car trunk for safekeeping. The defendant's sister then drove Peters to his own home. The shotgun and the ammunition remained in the defendant's sister's possession or control until she turned them over to the police at their request. No mention of the shooting itself was made to her by either of the two men. On the evidence, the jury was justified in finding the defendant guilty as charged. The evidence circumstantially pointed to the defendant either as the perpetrator of the offense or as an accomplice in its perpetration.

Affirmed.

*Mark M. Nomura, Alvin T. Sasaki* and *Anne T. Randolph,* Deputy Public Defenders for defendant-appellant.

*Mililani B. Trask* and *Peter B. Carlisle,* Deputy Prosecuting Attorneys for plaintiff-appellee.