STATE OF HAWAII, Plaintiff-Appellee, *v.* STEVEN RAY SIMPSON, Defendant-Appellant

NO. 7774

CRIMINAL NO. 6044

MARCH 1, 1982

RICHARDSON, C.J., LUM, AND NAKAMURA, JJ.,
RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

## OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Steven Ray Simpson (hereinafter appellant), appeals his jury conviction of murder in violation of HRS § 707-701 for which appellant was sentenced to life imprisonment with the possibility of parole. Appellant raises many issues in this appeal, but we find that only a few need discussion herein.[1] For the reasons set forth below, we affirm appellant's conviction.

On December 11, 1978, the body of Mary Catherine Drapp was found in a field of tall grass in the Fern Forest subdivision on the island of Hawaii. The cause of her death was determined to be by strangulation.

Ms. Drapp was last seen alive by several witnesses at the Hilo Airport at around 8:30 p.m., on December 10, 1978, having problems with her yellow Triumph automobile. Several other witnesses identified appellant being at the airport on December 10, 1978, at about 8:00 p.m. Other witnesses testified that the victim's yellow Triumph automobile was seen parked in the Fern Forest subdivision at various times, from about 10:00 or 10:30 p.m. on December 10, and at about 5:00 or 6:00 a.m. on December 11.

Michael Free, a fellow inmate in an adjoining cell at the Hawaii County Correctional Facility, testified that he and appellant had talked on three or four separate occasions concerning this incident. Appellant told Free that while at the airport, trying to make partial

---

[1] The other issues raised are without merit.

payment on a plane ticket for his girl friend, he (appellant) saw Mary Drapp apparently having car trouble. Appellant further stated that later that evening, he had sex with Ms. Drapp. These conversations also revealed that at some point in the evening, appellant listened for a heartbeat from a body in the field. It was Free's impression that appellant was with the victim's body before 5:00 a.m. on the morning of December 11, 1978. In addition, appellant stated to Free that previously he had met Mary Drapp in a health food store where he "attempted to put the make on her." In other words, appellant wanted to take her out, but she declined.

A knife, which was very similar to one owned by appellant was found in the area where the victim's body was found. Moreover, a pair of panties with a seminal stain matching the blood group of appellant was found near the body. Also, a beach towel belonging to Mary Drapp was recovered from appellant's residence and was found to have seminal stains and pubic hair matching those of appellant.

Appellant then presented evidence, through the testimony of Denise Drake, regarding the events of December 10 and 11, 1978. Appellant had told Drake that while at the airport, he helped a young lady fix her car. They left the airport together and appellant was given a ride home to Fern Forest. They then engaged in sexual intercourse. According to Drake, the knife, which was found near the body, was given to Drapp as a memento by appellant. Drapp left appellant's residence at about 12:00 midnight. Sometime the following morning, appellant discovered the victim's body in the field but did not report it because he was a parole violator.

The State presented rebuttal evidence showing the bad road conditions in Fern Forest and the low clearance to the ground of the victim's car. Thus, it was the prosecution's theory that it was unlikely that Drapp ever reached appellant's house within the time frame given.

After numerous pre-trial motions were disposed of, trial commenced. At the close of the State's opening statement, appellant moved for judgment of acquittal, arguing that the prosecutor had not shown that he produced sufficient evidence to convict appellant. That motion was denied by the trial court.

After the State presented its case in chief, appellant again moved for judgment of acquittal, asserting that there was insufficient evi-

dence to connect appellant with the alleged crime. This motion was also denied. Then after all the evidence was presented, appellant renewed his motion for judgment of acquittal, which was also denied. The jury then found appellant guilty as charged. After being sentenced to life imprisonment, appellant brings this appeal.

I.

Appellant's first contention is that the instant indictment was defective by the absence of the independent grand jury counsel created by Article I, Section 11 of the Hawaii State Constitution.

Appellant was indicted by the Hawaii County Grand Jury on July 27, 1979. At that time, the independent counsel had not been appointed and was not present during the proceeding because legislation implementing this constitutional amendment had not been enacted. Then, on November 16, 1979, appellant filed a motion to dismiss the indictment by the failure to appoint the independent grand jury counsel. That motion was denied.

The facts of this case are similar to that found in *State v. Rodrigues*, 63 Haw. 412, 629 P.2d 1111 (1981). In *Rodrigues, supra,* a defendant was indicted prior to the enactment of Act 209, S.L.H. 1980,[2] which implemented Article I, Section 11 of the Hawaii Constitution. We held that Article I, Section 11 of the Hawaii Constitution was not self-executing upon approval of the voters and that subsequent legislation was necessary to make its provisions operative. Moreover, we found that the accused has the burden of establishing prejudice by the absence of the independent grand jury counsel. Finding that prejudice was not established by the record, we affirmed the trial court's denial of the defendant's motion to dismiss.

We find *Rodrigues* to be dispositive of this issue.[3] The record does not reflect and appellant has made no showing of prejudice by the

---

[2] Act 209, S.L.H. 1980, was adopted on June 6, 1980 and has been codified in HRS §§ 612-51 through 612-59 (1981 Supp.).

[3] Other cases decided by this Court subsequent to *Rodrigues* regarding the independent grand jury counsel do not support appellant's claim. *See* State v. Kahlbaun, 64 Haw. 197, 638 P.2d 309 (1981); State v. Hehr, 63 Haw. 640, 633 P.2d 545 (1981); State v. Pendergrass, 63 Haw. 633, 633 P.2d 1113 (1981); State v. Melear, 63 Haw. 488, 630 P.2d 619 (1981).

failure to appoint or by the absence of the independent grand jury counsel. Thus, given that appellant was indicted prior to the enactment of Act 209, the instant indictment was not defective by the failure to appoint or by the absence of the independent grand jury counsel. *State v. Rodrigues, supra; State v. Kahlbaun,* 64 Haw. 197, 638 P.2d 309 (1981). The trial court properly denied appellant's motion to dismiss.

## II.

Appellant's next contention is that the trial court erred in not granting his motion for judgment of acquittal at the close of the State's opening statement. Appellant asserts that the State's opening statement did not establish a prima facie case of murder.

This Court has never decided this question before.[4] An examination of other cases in other jurisdictions reveals a split of authority on this point of law. *See Annot.,* 75 A.L.R.3d 649 (1977).

Some courts have refused to entertain a motion for judgment of acquittal at the close of the prosecution's opening statement. Their reasoning is that no provision in the law permits such a motion at that juncture and that there is no requirement that an opening statement set out facts sufficient to establish a prima facie case. *See White v. State,* 11 Md. App. 423, 274 A.2d 671 (1971); *People v. Kerrick,* 86 Cal. App. 542, 261 P. 756 (1927); *cf. State v. McElroy,* 71 R.I. 379, 46 A.2d 397 (1946) (must wait for evidence to determine if at variance with opening statement.)

The majority of jurisdictions have permitted a trial judge, under proper conditions, to grant a judgment of acquittal on the basis of the prosecutor's opening statement. *United States v. Capocci,* 433 F.2d 155 (1st Cir. 1970); *Hanley v. United States,* 416 F.2d 1160 (5th Cir. 1969), *cert. denied,* 397 U.S. 910 (1970); *In re United States,* 286 F.2d

---

[4] In Territory v. Bodine, 32 Haw. 528, 530 (1932), the Court avoided the question and stated:

Whether or not a motion for directed verdict can, in any event, be sustained for incompleteness in the opening statement of the prosecuting attorney, need not now be determined. The statement in the instant case offered competent proof of all the ingredients of the offense as defined by law and charged in the indictment and that fact alone is sufficient to defeat the exception.

556, 562 (1st Cir. 1961), *rev'd on other grounds sub nom. Fong Foo v. United States,* 369 U.S. 141 (1962); *Webb v. United States,* 191 F.2d 512 (10th Cir. 1951); *McGuire v. United States,* 152 F.2d 577 (8th Cir. 1945); *Rose v. United States,* 149 F.2d 755 (9th Cir. 1945); *United States v. Dietrich,* 126 F. 676 (8th Cir. 1904); *United States v. Maryland Coop. Milk Producers, Inc.,* 145 F. Supp. 151 (D.D.C. 1956); *People v. Gomez,* 131 Colo. 576, 283 P.2d 949 (1955); *see generally Annot.* 75 A.L.R.3d 649 (1977); 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE, *Criminal,* § 462 (1969 and 1981 Supp.). Although the trial court has this authority, in practice, a motion for judgment of acquittal at the close of the prosecutor's opening statement is rarely made and rarely granted.

The motion for judgment of acquittal has been granted and should be granted only when the following standard has been met.

> [I]f at an earlier stage basic facts appear inescapably leading to the conclusion that, irrespective of whatever other evidence may be introduced, the prosecution must fail. In that event, it is proper to stop the further introduction of evidence and entertain a motion for judgment of acquittal.[5]

*United States v. Maryland Coop. Milk Producers, Inc., supra,* at 152. In other words, "this power should be exercised only when it clearly and affirmatively appears from the opening statement that the charge against the defendant cannot be sustained under any view of the evidence consistent with the statement." *McGuire v. United States, supra,* at 580.[6]

The primary justification advanced by the courts in permitting a judgment of acquittal at the close of the prosecutor's opening statement is that it is a waste of time and money to proceed further with a cause that has no merit. *United States v. Ubl,* 472 F. Supp. 1236, 1237 (N.D. Ohio 1979).

---

[5] One situation where it would be proper to grant the motion for judgment of acquittal at the close of prosecutor's opening statement is where it is impossible for defendant to have committed the offense charged. *See* United States v. Dietrich, *supra.*

[6] We do note that the above-enunciated standard slightly differs from that employed on a motion for judgment of acquittal at the close of the prosecution's case or at the close of all the evidence. *See* State v. Summers, 62 Haw. 325, 614 P.2d 925 (1980). Given that the opening statement is not evidence, a more stringent standard is necessary.

We must also be mindful of the purpose of an opening statement. An opening statement merely provides an opportunity for counsel to advise and outline for the jury the facts and questions in the matter before them. *Webb v. United States, supra; Rose v. United States, supra; White v. State, supra; People v. Gomez, supra; see* Hawaii Benchbook, § 9.14 (1979). And it is also clear that an opening statement is not evidence. *United States v. Griffin,* 579 F.2d 1104, 1108 (8th Cir.), *cert. denied,* 439 U.S. 981 (1978); *Webb v. United States, supra; see* Hawaii Benchbook, *supra.* Moreover, an opening statement is not intended to inform a criminal defendant of the course of prosecution and the facts relied on so that the defendant will be able to meet these charges. *But see State v. Deppe,* 286 S.W.2d 776 (Mo. 1956).

Given the function an opening statement serves and the overwhelming authority supporting the rule, we hold that the trial court has the authority to grant the motion for judgment of acquittal at the close of the prosecutor's opening statement in light of the standard discussed previously. *United States v. Capocci, supra,* at 158.

We now examine whether the trial court properly denied the motion for judgment of acquittal at the close of the prosecutor's opening statement.

In his opening statement, the deputy prosecuting attorney stated, *inter alia,* that appellant was indicted and charged with the murder of Mary Catherine Drapp; that Mary Drapp and Timothy Lui-Kwan had developed a steady relationship; that on December 10, 1978, Drapp had car trouble at the airport while picking up Lui-Kwan's luggage; that she is seen leaving the airport at about 8:45 p.m.; that her car is seen parked in the rural and undeveloped Fern Forest subdivision at around 10:00 p.m.; that the victim's body is found at 6:00 p.m. the following evening in a field about 45 feet from her car; that Mary Drapp died from strangulation; that pubic and head hairs of the victim are found at appellant's residence; that a knife is found at the scene; that a beach towel and a white towel would link appellant to Drapp's car; that there were blood and semen stains on various items; and that appellant made some statements regarding Mary Drapp's murder.

We cannot say that by virtue of the facts alleged in its opening statement we would be lead to the inescapable conclusion that the prosecution would fail. The State's opening statement clearly impli-

cated appellant as being Mary Drapp's killer. As such, there was sufficient evidence alleged, albeit circumstantial, from which the State could prove appellant guilty of the offense charged. Based on this record, the trial court properly denied appellant's motion for judgment of acquittal at the close of the prosecutor's opening statement.

### III.

Appellant also contends that the trial court erred in denying his motion for judgment of acquittal at the close of the government's case in chief. Appellant urges that the State did not present sufficient evidence to support a prima facie case of murder.

It has been held that a criminal defendant who presents evidence on his own behalf waives appellate review of any error in the denial of the motion for judgment of acquittal made at the close of the government's case. Under the "waiver doctrine" appellate courts will review the sufficiency of the evidence in light of all the evidence presented in the record. *United States v. Feldman,* 425 F.2d 688, 692 (3rd Cir. 1970); *United States v. Greene,* 442 F.2d 1285, 1286-87 n.3 (10th Cir. 1971); *Viramontes-Medina v. United States,* 411 F.2d 981, 982 (9th Cir. 1969); *United States v. Haskell,* 327 F.2d 281, 282 n.1 (2nd Cir. 1964); *United States v. Goldstein,* 168 F.2d 666, 670 (2nd Cir. 1948); *In Re A.B.H.,* 343 A.2d 573, 575 (D.C. App. 1975); *Wesley v. United States,* 233 A.2d 514, 516 (D.C. App. 1967). This Court has not expressed its view on this precise issue of law. *But see, State v. Stuart,* 51 Haw. 656, 667-68, 466 P.2d 444, 450 (1970) (Levinson, J., concurring op.).

Courts of other jurisdictions are split on using the "waiver doctrine." The majority view has adopted the "waiver doctrine" as a viable legal basis. *See, United States v. Feldman, supra; United States v. Greene, supra; United States v. Cashio,* 420 F.2d 1132, 1134 (5th Cir. 1969), *cert. denied,* 397 U.S. 1007 (1970); *Wesley v. United States, supra; Cline v. United States,* 395 F.2d 138 (8th Cir. 1968); *see generally,* 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE, *Criminal,* § 463 (1969 and 1981 Supp.); 8 MOORE'S FEDERAL PRACTICE, § 29.05 (1969); *cf. Bogk v. Gassert,* 149 U.S. 17 (1893) (waiver rule adopted in civil cases).

Even the United States Supreme Court has given implicit ap-

proval to this doctrine. *See McGautha v. California,* 402 U.S. 183, 215-16 (1971); *United States v. Calderon,* 348 U.S. 160, 164 n.1 (1954).

Despite appearances of unfairness to criminal defendants, the "waiver doctrine" serves an important function in the criminal justice system. The court in *United States v. Belt,* 574 F.2d 1234, 1236-37 (5th Cir. 1978), stated:

> The waiver doctrine is not mere formalism but is an expression of our adversary justice system which requires a defendant to accept the risks of adverse testimony that he introduces. The doctrine's operative principle is not so much that the defendant offering testimony "waives" his earlier motion but that, if he presents the testimony of himself or of others and asks the jury to evaluate his credibility (and that of his witnesses) against the government's case, he cannot insulate himself from the risk that the evidence will be favorable to the government. Requiring the defendant to accept the consequences of his decision to challenge directly the government's case affirms the adversary process. [Footnote omitted.]

*See United States v. Goldstein, supra.*

Another justification for retaining the "waiver doctrine" was aptly stated in *State v. Smith,* 332 So.2d 773, 776 (La. 1976).

> Despite the potential unfairness of the policy to a defendant, an erroneous denial of a motion for acquittal is nevertheless not cause for reversal if the evidence as a whole, including the defendant's case, justifies the affirmance as guilty (assuming no other reversible error). To reverse, in such an instance, is to reverse not because the evidence as a whole does not prove guilt; but because of an erroneous interlocutory ruling which was cured by subsequent evidence.

Moreover, a criminal defendant is not compelled to present a defense. The defendant may stand pat for the State has the burden of proving each and every element of the crime charged beyond a reasonable doubt in order to sustain a criminal conviction. *See Mullaney v. Wilbur,* 421 U.S. 684 (1975); *State v. Cuevas,* 53 Haw. 110, 113, 488 P.2d 322, 324 (1971) and cases cited therein.

We note that the "waiver doctrine" has been subjected to growing criticism. A few jurisdictions have rejected the "waiver doctrine". *United States v. Rizzo,* 416 F.2d 734 (7th Cir. 1969); *Powell v. United States,* 418 F.2d 470 (D.C. Cir. 1969); *United States v. Watkins,* 519

F.2d 294 (D.C. Cir. 1975); *Austin v. United States*, 382 F.2d 129 (D.C. Cir. 1967); *United States v. Burton*, 472 F.2d 757 (8th Cir. 1973); *see Comment*, "The Motion for Acquittal: A Neglected Safeguard," 70 Yale L.J. 1151 (1962) (hereinafter Comment). Where the "waiver doctrine" has been abolished, appellate courts may review the denial of acquittal motions with only the evidence available at the time the motion was made.

Critics contend that the waiver doctrine overlooks the function of requiring the State to prove its case beyond a reasonable doubt. *State v. Smith, supra,* at 775. Moreover, a defendant is put into a dilemma of choosing between resting his case on the rare hope that the appellate court will agree that there was insufficient evidence in the government's case to sustain a conviction or putting on evidence in defense which may plug a gap in the government's case. *Comment, supra; State v. Stuart, supra* (Levinson, J., concurring op.).

Other courts have created exceptions or limited the application of the "waiver doctrine" to ameliorate its harsh effects. Thus, the "waiver doctrine" has been held inapplicable where only the co-defendant testifies, *United States v. Lopez,* 576 F.2d 840, 842-43 (10th Cir. 1978); *United States v. Arias-Diaz,* 497 F.2d 165 (5th Cir. 1974), *cert. denied,* 420 U.S. 1003 (1975), or a defendant puts on evidence to explain, rebut or impeach damaging testimony of a co-defendant, *United States v. Belt, supra; Cephus v. United States,* 324 F.2d 893 (D.C. Cir. 1963), or recalling the government witness tantamounts to continued cross-examination. *United States v. Perez,* 526 F.2d 859, 863-64 (5th Cir.) *cert. denied,* 429 U.S. 846 (1976).

The standard which guides the trial judge in evaluating a motion for judgment of acquittal is the same regardless of when the motion is made, whether before submitting the case to the jury or after the jury has returned a verdict. *State v. Summers, supra.* That standard is:

> . . . whether, upon the evidence viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. [Citations omitted.]

*State v. Brighter,* 62 Haw. 25, 31, 608 P.2d 855, 859 (1980).

We have carefully reviewed the record in this case. Regardless of whether we consider only the evidence at the close of the govern-

ment's case or all the evidence, in either case, we find that in this particular instance there was sufficient evidence presented, such that the trial court properly denied appellant's motion for judgment of acquittal. The State presented a prima facie case of murder, albeit based on circumstantial evidence.[7] From this evidence, a reasonable mind could fairly conclude that appellant was guilty of murder beyond a reasonable doubt.

Affirmed.

*Juliette T. Sarmiento* (on the opening brief) and *Keith M. Kiuchi* (on the reply brief), Deputy Public Defenders, for defendant-appellant.

*Stanford H. Masui,* First Deputy Prosecuting Attorney, County of Hawaii (on the brief), for plaintiff-appellee.

---

[7] It is clear that the State's case is based on circumstantial evidence. It is well settled in this jurisdiction that guilt may be proved beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence. State v. Bright, 64 Haw. 226, 638 P.2d 330 (1981); State v. Murphy, 59 Haw. 1, 575 P.2d 448 (1978); State v. O'Daniel, 62 Haw. 518, 616 P.2d 1383 (1980). No greater degree of certainty is required where a conviction is based solely on circumstantial evidence rather than on direct evidence. State v. Smith, 63 Haw. 51, 621 P.2d 343 (1980).