**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000034
17-APR-2018
08:06 AM**

NO. CAAP-17-0000034

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
MARY JANE DELGADO PONCE, aka Mary Jane Dalumpinis,
Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 16-1-0734)

SUMMARY DISPOSITION ORDER
(By: Fujise, Acting Chief Judge, Leonard and Chan, JJ.)

Defendant-Appellant, Mary Jane Delgado Ponce, aka Mary Jane Dalumpinis (Ponce), appeals from the Judgment of Conviction and Sentence (Judgment), entered on January 10, 2017, by the Circuit Court of the First Circuit (circuit court).[1] Plaintiff-Appellee State of Hawai'i (State) charged Ponce with theft in the second degree, alleging that from April 1, 2010 through April 30, 2014, Ponce received $3,723.00 in food stamps overpayment due to her intentional failure to disclose her marriage to Frank Smith (Smith) to the Department of Human Services (DHS). After a trial by jury, Ponce was found guilty and sentenced to five (5) years imprisonment with a mandatory minimum term of one year, eight months.

---

[1] The Honorable Shirley Kawamura presided.

On appeal, Ponce contends that (1) The circuit court improperly admitted State's Exhibits 5 and 8 into evidence under the business record exception to hearsay, (2) there was insufficient evidence to support her conviction, (3) the circuit court erred by denying Ponce's Motion for Judgment of Acquittal because the State failed to prove the element of "deception", and (4) the circuit court erred when it denied Ponce's Motion for New Trial upon the late discovery of Ponce's inability to read.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Ponce's points of errors as follows.

I.    **State's Exhibits 5 and 8 Were Properly Admitted Pursuant to Hawaii Rules of Evidence (HRE) Rule 803(b)(6)**

Ponce contends that the circuit court erred in admitting State's Exhibits 5 and 8 under HRE Rule 803(b)(6) because the exhibits were prepared in anticipation of litigation and were testimonial, making them subject to sixth amendment confrontation.  See Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004).

HRE Rule 803(b)(6) is an exception to the hearsay rule that allows the admission of records of "regularly conducted activities."  HRE Rule 803(b)(6) provides:

> **Rule 803  Hearsay exceptions; availability of declarant immaterial.**  The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . . .
>
> (b) Other exceptions.
>
> . . . . .
>
> (6)    Records of regularly conducted activity.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

Ponce argues that the circuit court improperly admitted State's Exhibits 5 and 8 under HRE Rule 803(b)(6). State's Exhibits 5 and 8 are Eligibility Review (ER) forms filled out and submitted to DHS by Ponce, dated January 16, 2013 and January 24, 2014, respectively. In order to continue receiving food stamp benefits, later referred to as Supplemental Nutrition Assistance Program (SNAP) benefits,[2] ER forms are automatically mailed to welfare benefit recipients a year after an initial Application for Financial and SNAP Assistance is processed. ER forms are blank pre-printed forms in which the applicant responds to questions with respect to any changes which may have transpired in the preceding year affecting eligibility. Applicants must complete the ER form by reviewing their eligibility information contained in the form and by listing, among other things, any changes to the applicant's household composition, income, and assets. If changes occur, DHS makes adjustments to the applicants eligible benefits. After the applicant completes the ER form, it can be mailed, faxed, or brought directly to DHS's processing center where a DHS clerk registers the ER form and assigns an eligibility worker to schedule an in-person or over-the-phone interview for the purpose of reviewing the submitted form with the applicant.

The initial eligibility worker assigned to Ponce's case to review her 2013 and 2014 ER forms was Edison Espiritu (Espiritu), who was, at the time of trial, on vacation and unable to testify. At trial, David Kihara (Kihara), a DHS eligibility worker, testified as the custodian of records for DHS. Kihara had been employed by DHS as an eligibility worker for thirty-five years, in which the past ten years his responsibilities included, reviewing DHS cases to determine eligibility factors, ensuring the accuracy of eligibility benefits, and computing corrected amounts if an overpayment was made.

Kihara testified that case files for all welfare

---

[2] After 2010, the Food Stamps Program became known as the federal Supplemental Nutrition Assistance Program.

benefit recipients are kept and maintained by DHS. Records that are kept in the case file include, all applications, reporting systems, changes reported, and any supporting documentation submitted by the recipient, which include the annual ER forms. The ER forms are used by DHS to determine household composition and the income of applicants to allow for proper assessment of the amount a recipient is entitled to receive in benefits. As to State's Exhibit 5 and 8, Kihara testified that both forms were filled out and signed by Ponce and were prepared in the course of DHS's regularly conducted activity as an annual assessment and determination of SNAP eligibility benefits. He stated that State's Exhibits 5 and 8 were the types of forms that would be kept in the case file for all welfare recipients and the types of records that are regularly maintained and updated. Kihara further testified that the ER forms are the types of records that are entered into a recipients case file at the time that they are received or made.

Ponce contends that State's Exhibit 5 and 8 should not have been admitted under HRE Rule 803(b)(6) because they were not records made in the regular course of business and rather were prepared primarily in anticipation of litigation. See Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, (1943). In Palmer, the Supreme Court held that an accident report prepared by a railroad employee following a railroad accident was not a business record because it was not made in the regular course of business. Id. at 115, 63 S.Ct. at 481. The Supreme Court explained that the regularity with which the reports are prepared did not by itself mandate admissibility. Id. at 111-12, 63 S.Ct. at 479-80. Rather, the records should first appear to be required "for the systematic conduct of the business as a business." Id. at 113, 63 S.Ct. at 480.

Ponce asserts that the inclusion of warnings of criminal penalties along with a certification required by both recipient and eligibility worker attesting to the truthfulness of the form, clearly indicate that the forms will likely be used in the prosecution of a recipient, should the need arise. The ER

4

form states, in relevant part:

> **YOUR AUTHORIZATION:**
> * I agree that the information I provide to the Department will be subject to verification by Federal, State and local officials to determine if such information is factual; and if any information is incorrect, food assistance may be denied and I may be subject to criminal prosecution for knowingly providing incorrect information.
>
> **I UNDERSTAND:**
> 1. The questions on this form and the penalty for hiding or giving false information.
> . . . .
> 6. If I do not report a change that is required to be reported, or report incorrectly, and am overpaid:
> a) I must repay the department.
> b) I may be fined, imprisoned, and/or disqualified from receiving benefits in the future.
> c) I may be subject to prosecution under applicable state and/or federal laws.
>
> **YOUR CERTIFICATION (Must be signed to be considered a valid application):**
> * I certify under penalty of perjury, that my answers are correct and complete to the best of my knowledge.
> * I certify that I have been informed of my rights and responsibilities by the worker and I agree to heed these responsibilities.

Additionally, the eligibility worker that is assigned to the recipient's case upon receiving the ER form is also required to certify that "the applicant/recipient has been informed of his/her rights and responsibilities and the possibility of criminal charges for misrepresenting or concealing facts which determine eligibility."

In State v. Fitzwater, 122 Hawai'i 354, 227 P.3d 520 (2010), the Hawai'i Supreme Court distinguished between business records made in the "regular course" of business and those that are prepared for the sole purpose of litigation in its admissibility determination of a police officer's speed check card used to prove the accuracy of the police vehicle's speedometer. The supreme court held that although there was an understanding that the results of a speed check would likely be used in the prosecution of speeding cases, the card could still qualify as a business record under HRE Rule 803(b)(6). Id. at 364, 227 P.3d at 530. The supreme court explained that "[t]he speed check card here was not created for use in a particular

5

dispute. Rather, the speed check card is more akin to documents that reflect the results of regularly conducted tests, which have been held to be admissible as business or government records even if they are frequently used in litigation." Id.

Similar to the speed check card in Fitzwater, although the ER forms are the type of business records that are likely to be used in litigation, the ER forms are not created for use in a particular dispute nor are they "created with the motivation of prevailing against a particular party" making its "trustworthiness [] inherently questionable." Id. ER forms are systematically utilized by DHS on a daily basis to establish a recipient's eligibility for SNAP benefits. The ER form's primary function is to determine and/or confirm the recipient's household composition and income to assess the amount of benefits the applicant is entitled to receive for the upcoming year. Further, Kihara's testimony established the foundation necessary for the admissibility of the ER Forms as business records. Accordingly, the circuit court properly admitted State's Exhibit 5 and 8 as business records pursuant to HRE Rule 803(b)(6).

Business records are not testimonial. Crawford v. Washington, 541 U.S. 36, 56 (2004). Because we hold that State's Exhibits 5 and 8 were properly admitted as a business record, and were not testimonial, we conclude that the Exhibits did not violate the confrontation clause. See U.S. v. Ray, 930 F.2d 1368, 1371 (9th Cir. 1990)(holding that a welfare fraud investigator's testimony was sufficient to establish foundational requirements under the business record exception to hearsay regarding a recipient's welfare records, which included the recipients application for benefits reviewed by an eligibility worker, and that the properly admitted exhibits did not violate the confrontation clause); See also Terry v. State, 397 S.W.3d 823, 835 (Tex. App. 2013)(finding that the primary purpose for a caseworker's generic worksheets generated following a welfare recipient's interview, is to document recipient's statements to determine eligibility and the amount of an applicant's SNAP benefits and holding that the statements contained in the

worksheets are not testimonial, therefore its admission did not violate recipient's rights under the Confrontation Clause).

Based on the foregoing, we conclude that the circuit court did not err by admitting State's Exhibits 5 and 8 under HRE Rule 803(b)(6) and holding that the exhibits were not testimonial.

## II. The Prosecution Presented Sufficient Evidence to Support The Guilty Verdict

> We review the sufficiency of evidence on appeal as follows: [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (citation omitted).

The jury found Ponce guilty of Theft in the Second Degree in violation of Hawaii Revised Statutes (HRS) §§ 708-831(1)(b) and 708-830(2).

HRS § 708-831 (2014) provides in relevant part:

> §708-831  **Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:
>
> . . . .
>
> (b)  Of property or services the value of which exceeds $300[.]

HRS § 708-830 (2014) defines "theft" in relevant part:

> § 708-830  **Theft.** A person commits theft if the person does any of the following:
>
> . . . .
>
> (2)  Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

The evidence provided at trial indicates that Ponce

7

exerted control over the property of another from April 1, 2010 through April 30, 2014. Kihara reviewed Ponce's entire public assistance case file, which included all of her DHS applications, verification records, report of earnings, eligibility review forms and DHS's investigation report on Ponce. Kihara was also assigned to review Ponce's electronic benefits transaction (EBT) activity printout and an overpayment schedule prepared by DHS Eligibility Worker, Nena Vallejo (Vallejo) who was unavailable to testify at trial. Kihara stated that he had performed his own independent calculation as to the overpayment amount by determining the amount Ponce should have received and comparing it against what she had actually received. Kihara testified that after reviewing Ponce's case file, he was able to confirm that from April 1, 2010 through April 30, 2014, Ponce was receiving welfare assistance in the amount of $3,723 to which she was not entitled to. Kihara testified that the overpayment resulted from Ponce's failure to report her marriage to Smith in March 2010.

Additionally, there was substantial evidence to support a finding that Ponce engaged in deception to acquire benefits to which she was not entitled to. HRS § 708-800 (2014) provides:

> § 708-800 **Definitions of terms in this chapter.**
> . . . .
>
> "Deception" occurs when a person knowingly:
> (1)  Creates or confirms another's impression which is false and which the defendant does not believe to be true;
> (2)  Fails to correct a false impression which the person previously has created or confirmed[.]

Ponce appears to argue that the State did not prove the element of "deception" because the State failed to present any evidence that Ponce possessed the requisite intent to deceive DHS, i.e. that from April 1, 2010 through April 30, 2014, Ponce had actual knowledge of what she would have received had she reported her marriage to DHS and deliberately chose not to disclose her marriage or correct DHS's impression that Smith was a non-related co-habitant.

> Given the difficulty of proving the requisite state of mind by direct evidence in criminal cases, "[w]e have consistently held that . . . proof by circumstantial

8

> evidence and reasonable inferences arising from circumstances surrounding the [defendant's conduct] is sufficient . . . . Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *State v. Sadino*, 64 Haw. 427, 430, 642 P.2d 534, 536-37 (1982) (citations omitted); *See also State v. Simpson*, 64 Haw. 363, 373 n.7, 641 P.2d 320, 326 n.7 (1982).

State v. Staley, 91 Hawaiʻi 275, 286, 982 P.2d 904, 915 (1999) (citations omitted).

In this case, DHS Eligibility Workers, Imelda Makishima, Dustan Canne, David Kihara, and Jacqueline Kaleiwahea all testified that Ponce was orally advised of her rights, responsibilities, and her continuing duty to disclose changes in her household that affect sources of income, including her marital status. Ponce submitted an Application for Financial and Food Stamps Assistance in 2010, an Application for Financial and SNAP Assistance in 2011, and ER Forms for 2012, 2013, and 2014, all indicating that Smith was either a friend, caregiver, or roommate.

Furthermore, at trial, Ponce confirmed that she had been receiving food stamp/SNAP benefits since 1983. Ponce acknowledged that she was previously married in 1983 and at that time, she had informed DHS of her marriage and identified her husband as a household member in her welfare case. In regards to the State's Exhibits that were entered into evidence at trial, Ponce testified that she was the one who filled out all the applications for welfare benefits, the signatures on the exhibits were hers, the letters and other documents submitted to DHS were hers, she had received the EBT card from DHS, and she received the benefits as shown on the EBT printout. Ponce testified that she was aware that she was required to report her marriage with Smith and acknowledged that instead she had listed Smith as either her friend, caregiver, roommate and/or indicated that her marital status was single in the DHS applications and ER Forms submitted by her.

Based on the foregoing, considering the evidence in the strongest light for the prosecution, we conclude that there was substantial evidence to support the conclusion that Ponce

deceived DHS by failing to report her marriage to Smith, thereby obtaining SNAP benefits in excess of $300 to which she was not entitled, as a result of that deception.

### III. The Circuit Court Properly Denied Ponce's Motion for Judgment of Acquittal

Based on our holding that the evidence presented at trial was sufficient to sustain Ponce's conviction, we conclude that the circuit court did not err when it denied Ponce's Motion for Judgment of Acquittal. State v. Davalos, 113 Hawai'i 385, 389, 153 P.3d 456, 460 (2007) (quoting State v. Okumura, 78 Hawai'i 383, 403 n.15, 894 P.2d 80, 100 n.15 (1995) (stating that "[a]lthough different language is sometimes used to describe the standard of review when the denial of a motion for judgment of acquittal is appealed, the test on appeal is actually identical-- if there was sufficient evidence to support the conviction, the motion for judgment of acquittal was properly denied; if there was insufficient evidence, the denial of the motion was error")).

### IV. The Circuit Court Properly Denied Ponce's Motion for New Trial

Ponce contends that the circuit court abused its discretion in denying her motion for new trial, based on "newly discovered evidence," specifically, the discovery of Ponce's inability to read after trial at the hearing on her Motion for New Trial on December 29, 2016. Ponce argues that had the evidence of her inability to read been available at trial, it would have been further investigated to determine whether it affected her filling out and signing of documents and used to prove that she did not have the requisite state of mind for the charge of theft.

> A motion for new trial based on newly discovered evidence will only be granted if (1) the evidence has been discovered after trial; (2) such evidence could not have been discovered before or at trial through the exercise of due diligence; (3) the evidence is material to the issues and not cumulative or offered solely for purposes of impeachment; and (4) the evidence is of such a nature as would probably change the result of a later trial.

State v. Mabuti, 72 Haw. 106, 113, 807 P.2d 1264, 1268 (1991).

Ponce's post-trial admission of her inability to read does not constitute newly discovered evidence in the context of a motion for a new trial because Ponce was aware of her inability to read at all times before trial, at trial, and after trial. Additionally, the evidence is not material to the issues nor would it have changed the result of a later trial. Upon DHS receiving Ponce's Applications and ER Forms for welfare benefits, the Eligibility Worker assigned to her case would review Ponce's submission with her to verify her responses during which time Ponce always confirmed that Smith was nothing more than a non-related co-habitant rather than her husband. During these in-person or telephone interviews, Ponce was orally instructed of her rights and responsibilities, the requirement to report any changes in household or income, and requirement to report truthfully. Further, prior to Ponce's initial interview in 2010, Ponce was required to watch an instructional video on the welfare system. All evidence indicating that the ability to read was not necessary to establish the requisite intent to deceive.

Based on the foregoing, we hold that the circuit court did not abuse its discretion in denying the Motion for New Trial.

Therefore, IT IS HEREBY ORDERED that the Judgment of Conviction and Sentence, entered on January 10, 2017, by the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, April 17, 2018.

On the briefs:

Dana S. Ishibashi,
for Defendant-Appellant.

Karen Droscoski,
Deputy Attorney General,
for Plaintiff-Appellee.

Acting Chief Judge

Associate Judge

Associate Judge

11