880 P.2d 1224

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Loveni IOSEFA, Defendant–Appellant.**

No. 16217.

Intermediate Court of Appeals of Hawai'i.

June 30, 1994.

Certiorari Granted July 21, 1994.

Certiorari Dismissed as Improvidently
Granted Oct. 5, 1994.

Deborah L. Kim, Deputy Public Defender, on the brief, Honolulu, for defendant-appellant.

James H.S. Choi, Deputy Pros. Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and HEEN and WATANABE, JJ.

WATANABE, Judge.

Defendant Loveni Iosefa (Defendant) appeals from his jury conviction of Sexual As-

sault in the First Degree, Sexual Assault in the Third Degree, Attempted Sexual Assault in the First Degree, and Kidnapping, contending that several reversible errors were committed by the trial court.

First, Defendant argues that the trial court committed plain error when it failed to read to the jury an instruction, which had been agreed to by the parties, explaining the presumption of innocence and the State's burden of proving Defendant's guilt beyond a reasonable doubt.[1]

Second, Defendant insists that the trial court committed plain error when it failed to instruct the jury that "the prosecution must prove beyond a reasonable doubt that [Defendant] acted with a 'knowing' state of mind as to each element of the [first and third degree] sexual [assault] offenses charged ..., including strong compulsion." Opening Brief (O.B.) at 10.

Third, Defendant maintains that it was plain error for the trial court to give the jury an instruction on the Attempted Sexual Assault in the First Degree charge without specifying the criminal conduct which supported this charge.

Finally, Defendant contends that the trial court erred when it refused to allow the pastor of his church to testify about Defendant's good character.

We conclude that the trial court committed plain error when it failed to read to the jury the stipulated instruction on presumption of innocence and reasonable doubt. Accordingly, we vacate the trial court's judgment and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

On the evening of January 26, 1990, Complainant, a 16–year–old girl who attended Wai'anae High School, went to a 6:30 p.m. movie in NnKuli with her friend Denise. After the movie ended between 8:15 and 8:30

p.m., Complainant and Denise immediately tried to catch a bus to take them home because Complainant had a 9:00 p.m. curfew. However, a bus did not arrive for almost an hour, and, according to Denise, Complainant expressed some concern at the time that her mom would "probably yell or catch a fit, or something" because she would get home late. Transcript (Tr.) 3/4/92 at 163.

Complainant and Denise boarded the bus when it finally arrived. Complainant got off the bus on Farrington Highway, then walked up Hakimo Road towards her home on Kanahale Road. Complainant claims that as she was walking up Hakimo Road, she encountered Defendant, who offered to walk her home. Although she turned down Defendant's offer, he continued to walk with her and converse with her. Tr. 3/3/92 at 81.

Defendant testified that he had been staying at his cousin's house on Hakimo Road at the time, since it was located three or four houses away from the church where Defendant had choir practice. On the evening in question, he met up with Complainant while on his way to visit his girl friend, who also lived on Hakimo Road. According to Defendant, when they reached his girl friend's house, he offered to escort Complainant up the street to her house, and Complainant accepted his offer. Defendant then walked with Complainant towards her house for approximately five minutes before turning back towards his girl friend's house.

Complainant maintains that as she and Defendant were walking, Defendant asked whether her house was close by. When she responded affirmatively, Defendant said he would be going, and turned to walk in the other direction. Shortly thereafter, however, Defendant grabbed Complainant's arm, pulled Complainant down the side of a hill, began kissing her, yanked down her skirt, shorts, and panties, and then started to force himself upon her. In the process, Complainant's sweatshirt and purse fell into the mud

---

**1.** Defendant did not actually raise this issue in his Opening Brief. However, pursuant to this court's request for supplemental briefs on the issue, Defendant argued in his supplemental brief that the trial court's failure to read the instruction constituted plain error.

and grass. Complainant also claims that Defendant pulled his own pants down, exposed his penis, and then inserted his finger into her vagina. He also pulled Complainant towards him and she felt his penis on the outside of her vagina. Complainant further testified that Defendant touched her breast with his hands.

Complainant stated that she subsequently was able to push Defendant away, pick up her purse and sweatshirt, and walk towards her house. Defendant then told Complainant he was sorry.

Upon reaching her home, Complainant discovered a note on the outside door, stating that because Complainant had failed to return home by 9:00 p.m., her parents had gotten worried and had gone out looking for her. Complainant, thinking that no one was home, entered the house, showered, and then telephoned Denise to tell her what had transpired. At trial, Complainant's mother testified that Complainant's brothers had put the note on the door to play a trick on Complainant, and they were all in the mother's bedroom when Complainant returned home. Complainant's mother further testified that she became concerned when she overheard Complainant crying on the phone and asked Complainant for an explanation. After Complainant told her mother what had happened earlier, Complainant's mother called the police and took Complainant to the Wai'anae police station and the Wai'anae Comprehensive Health Center.

Defendant was later indicted for: (1) Sexual Assault in the First Degree, a violation of Hawai'i Revised Statutes (HRS) § 707–730(1)(a) (Supp.1992) (Count I); (2) Sexual Assault in the Third Degree, a violation of HRS § 707–732(1)(e) (Supp.1992) (Count II); (3) Attempted Sexual Assault in the First Degree, a violation of HRS § 705–500 (1985) and § 707–730(1)(a) (Supp.1992) (Count III); and (4) Kidnapping, a violation of HRS § 707–720(1)(d) (Supp.1992) (Count IV).

2. Defendant's Instruction No. 1, which was based on Hawai'i Standard Jury Instruction 3.02, provided:
**Presumption of Innocence; Reasonable Doubt**

At trial, Defendant sought to call the Reverend Aivao to the stand as a character witness. However, the trial court refused to allow the testimony. Tr. 3/4/92 at 212–13.

During the settlement of jury instructions, the State and Defendant stipulated to the submission of various jury instructions, some of which Defendant now challenges as plainly erroneous. Furthermore, although the parties agreed that the trial court should read to the jury Defendant's Instruction No. 1, which explained the presumption of innocence and reasonable doubt precepts, the trial court inadvertently failed to read this instruction to the jury.

During its deliberations, the jury sent Communication No. 1 to the trial judge, requesting a copy of the court's jury instructions. Record on Appeal (R.A.) at 154. A clean set of written instructions, including Defendant's Instruction No. 1, was thereafter provided to the jury, without objection from either party.

On March 6, 1992, the jury found Defendant guilty as charged. On May 6, 1992, the trial judge sentenced Defendant to twenty years' incarceration for Counts I and III, ten years' incarceration for Count IV, and five years' incarceration for Count II, all terms to run concurrently. R.A. at 167. This timely appeal followed.

DISCUSSION

I.

*The Court's Failure to Instruct the Jury on the Presumption of Innocence and Beyond a Reasonable Doubt Standard*

A.

█ Despite the State's agreement that the trial court should read to the jury Defendant's Instruction No. 1,[2] which explained the presumption of innocence requirement and

You must presume the defendant is innocent of the charge against him. This presumption remains with the defendant throughout the tri-

defined the State's burden of proving Defendant's guilt beyond a reasonable doubt, the transcripts of the proceedings below reveal that the trial court failed to do so. We conclude, based on the facts of this case, that such failure constituted reversible error.

■ The principle that there is a presumption of innocence in favor of the accused, although not articulated in the United States Constitution, "is a basic component of a fair trial under our system of criminal justice," *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126, 130, *reh'g denied,* 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976), and "its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481, 491 (1895).

■ It is also well-settled that the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution protects an accused against a conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute

the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Further, a jury must be instructed to apply this standard when determining the guilt or innocence of a defendant. *Jackson v. Virginia,* 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 2790 n. 14, 61 L.Ed.2d 560, 574 n. 14, *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

■ The United States Supreme Court has expressly held, however, that "the failure [of a trial court] to give a requested instruction on the presumption of innocence does not in and of itself violate the [United States] Constitution," and "such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." *Kentucky v. Whorton,* 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640, 643, *reh'g denied,* 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979).[3]

al of the case, unless and until the prosecution proves the defendant guilty beyond a reasonable doubt.

The presumption of innocence is not a mere slogan but an essential part of the law that is binding upon you. It places upon the prosecution the duty of proving every material element of the offense charged against the defendant beyond a reasonable doubt.

You must not find the defendant guilty upon mere suspicion or upon evidence which only shows that the defendant is probably guilty. What the law requires before the defendant can be found guilty is not suspicion, not probabilities, but proof of the defendant's guilt beyond a reasonable doubt.

What is a reasonable doubt?

It is a doubt in your mind about the defendant's guilt which arises from the evidence presented or from the lack of evidence and which is based upon reason and common sense.

Each of you must decide, individually, whether there is or is not such a doubt in your mind after careful and impartial consideration of the evidence.

Be mindful, however, that a doubt which has no basis in the evidence presented, or the lack of evidence, or reasonable inferences therefrom, or a doubt which is based upon imagina-

tion, suspicion or mere speculation or guesswork is not a reasonable doubt.

What is proof beyond a reasonable doubt?

If, after consideration of the evidence and the law, you have a reasonable doubt of the defendant's guilt, then the prosecution has not proved the defendant's guilt beyond a reasonable doubt and it is your duty to find the defendant not guilty.

If, after consideration of the evidence and the law, you do not have a reasonable doubt of the defendant's guilt, then the prosecution has proved the defendant's guilt beyond a reasonable doubt and it is your duty to find the defendant guilty.

Record on Appeal at 113–14.

**3.** In *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), for example, the Supreme Court held that the trial court's refusal to give the defendant's requested instruction on the presumption of innocence violated his right to a fair trial because: (1) the trial court's instructions on reasonable doubt were skeletal; (2) harmful inferences were possible from the prosecutor's references to the indictment and his repeated suggestions that the defendant's status as such tended to establish his guilt; and (3) the trial was essentially a swearing contest between the victim and the defendant.

In a concurring opinion, Justice Brennan explained that he joined the majority's opinion

■ Furthermore, although "[t]he reasonable-doubt standard plays a vital role in the American scheme of criminal procedure," and "is a prime instrument for reducing the risk of convictions resting on factual error," *In re Winship*, 397 U.S. at 363, 90 S.Ct. at 1072, 25 L.Ed.2d at 375, the United States Supreme Court recently recognized that:

> [T]he [United States] Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the [United States] Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."

*Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583, 590, *reh'g denied* by *Sandoval v. California*, —— U.S. ——, 114 S.Ct. 1872, 128 L.Ed.2d 492 (1994) (citations omitted, quoting *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167 (1954), *reh'g denied*, 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955)).

■ In *State v. Olivera*, 57 Haw. 339, 555 P.2d 1199 (1976), the Hawai'i Supreme Court also adopted a case-by-case approach for evaluating whether a jury should be given a definition of reasonable doubt. Noting that there is a split in authority as to the necessity or advisability of explaining the term to a jury, the supreme court said that it was "not persuaded that it should be held to be error for the Hawai['i courts to follow [the] practice" of defining the term for the jury. *Id.* at 342, 555 P.2d at 1201. The supreme court further held that on appeal, the question is "whether 'the instructions correctly conveyed

the concept of reasonable doubt to the jury.'" *Id.* (quoting *Holland v. United States, supra* ).

Applying the above precepts and evaluating the totality of the circumstances in the instant case, we conclude that Defendant's federal constitutional right to due process and a fair trial were seriously jeopardized by the trial court's failure to read to the jury Defendant's Instruction No. 1.

At trial, the physician who had examined Complainant on the night in question testified that Complainant did not have any bruises, scratches, or abrasions on her head, neck, arms, legs, back, or chest, although she did have some excoriation, or stretching, and some redness to her genitalia, which were consistent with rubbing or a finger insertion in that area. Tr. 3/3/92 at 52–55. Although Complainant's sweatshirt, which had grass and mud stains, and her sandals, which were muddied, were introduced into evidence, police investigators were unable to find any direct evidence or eyewitnesses to confirm that the alleged crime had taken place. Moreover, Defendant implied that Complainant had fabricated the alleged incident because of Complainant's concern that her mother would be upset with her for returning home late.

The trial below thus essentially involved a swearing contest between Complainant and Defendant, and required the jury to determine the credibility of the prosecution's or defense's version of the events on the night in question. Under these circumstances, we conclude that the trial court's failure to orally instruct the jury about the presumption of Defendant's innocence and the beyond-a-reasonable-doubt concept heightened the risk that Defendant would be found guilty and thus unfairly deprived him of his right to due process and a fair trial.

### B.

■ The State argues that since the jury requested and received a written set of all

---

because "it reaffirms that 'the presumption of innocence, although not articulated in the [United States] Constitution, is a basic component of a fair trial under our system of criminal justice,'" and "[i]t follows from this proposition, as is clear from the Court's opinion, that trial judges should

instruct the jury on a criminal defendant's entitlement to a presumption of innocence in all cases where such an instruction is requested." *Id.* at 490–91, 98 S.Ct. at 1937, 56 L.Ed.2d at 478.

**184**

the trial court's instructions, including Defendant's Instruction No. 1, the failure of the trial court to read Defendant's Instruction No. 1 to the jury was harmless beyond a reasonable doubt. We disagree.

It is impossible to tell from the record whether the entire jury actually read all of the court's written instructions during its deliberations. Since the jury itself requested the written instructions, however, it is quite possible that questions had arisen in the jury room with respect to particular aspects of the court's oral instructions, which may have caused the jury to focus on only certain written instructions in the course of their deliberations.

█ Moreover, since Defendant's life and liberty were at stake during the trial below, it was important that the trial court instruct the jury in open court. As the Court of Appeals for the Third Circuit stated in *United States v. Noble*, 155 F.2d 315, 318 (3d Cir.1946):

> [N]ot only are counsel and the defendant entitled to hear the instructions in order that they may, if they are incorrect, object to them and secure their prompt correction by the trial judge, but it is equally important to make as certain as may be that each member of the jury has actually received the instructions. It is therefore essential that all instructions to the jury be given by the trial judge *orally* in the presence of counsel and the defendant.

(Emphasis added.) Since a written copy of the court's instructions cannot serve as a substitute for an oral charge, 2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 483, at 697 (2d ed. 1982), it follows that the trial court's failure to read the agreed-upon instruction constituted plain error, requiring a remand of this case for a new trial.

## II.

*The Jury Instructions on the Elements of First and Third Degree Sexual Assault*

In its charge to the jury, the trial court, without objection from Defendant, gave the following instructions regarding the elements of First and Third Degree Sexual Assault:

> In count 1, [Defendant] is charged with the offense of Sexual Assault in the First Degree.

> A person commits the offense of Sexual Assault in the First Degree if he knowingly subjects another person to an act of sexual penetration by strong compulsion.

> There are three material elements to this offense, each of which the prosecution must prove beyond a reasonable doubt.

> The three elements are:

> 1. [Defendant] subjected [Complainant] to an act of sexual penetration by inserting his finger into her vagina; and

> 2. [Defendant] did so knowingly; and

> 3. [Defendant] did so by strong compulsion.

> In Count 2, [Defendant] is charged with the Offense of Sexual Assault in the Third Degree.

> A person commits the offense of Sexual Assault in the Third Degree if he knowingly subjects another person to sexual contact by strong compulsion.

> There are three material elements to this offense, each of which must be proven by the prosecution beyond a reasonable doubt.

> The three elements are:

> 1. Defendant subjected [Complainant] to sexual contact by touching her breasts; and

> 2. Defendant did so knowingly;

> 3. Defendant did so by strong compulsion.

Tr. 3/5/92 and 3/6/92 at 254–55.

According to Defendant, the trial court committed plain error when it gave the foregoing instructions because the instructions "only directed the jury to find [that Defendant] acted knowingly as to the element of penetration or contact[,]" and "failed to also

require that the jury find that [Defendant] acted *knowingly* with strong compulsion." O.B. at 11 (emphasis in original).

Defendant points out that pursuant to HRS § 702–204 (1985), "a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense[,]" and that HRS § 702–205 (1985) defines the "elements of an offense" as:

such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

Moreover, HRS § 702–207 (1985) states that "[w]hen the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears."

Defendant therefore argues that the trial court was required to advise the jury to apply the knowing state of mind to the element of "strong compulsion," and the trial court's failure to do so constituted plain error.

Because of our decision to remand this case for a new trial, we need not consider whether, in light of the totality of the circumstances at trial, plain error was committed in giving the two jury instructions. We agree, however, that the instructions could be worded more precisely to reflect the State's burden of proof. Accordingly, we suggest that the trial court restructure these instructions on remand in light of the foregoing statutes.

## III.

### *The Instructions on Attempted Sexual Assault in the First Degree and Sexual Assault in the Third Degree*

 Defendant argues that the trial court committed plain error when the instruction it gave on Attempted Sexual Assault in the First Degree failed to specify the particular criminal conduct by Defendant that gave rise to the charge.[4] Defendant explains that there was evidence of at least two separate kinds of conduct which the jury could have considered as a substantial step intended by Defendant to culminate in sexual penetration: (1) Defendant's action of pulling Complainant towards him so that she felt his penis on the outside of her vagina; or (2) Defendant's action of putting his fingers inside her vagina. Therefore, the instruction was prejudicially ambiguous because: (1) Defendant was entitled to a unanimous verdict on the count; and (2) without proper guidance, the jury may have improperly relied on the same evidence to convict Defendant of Attempted Sexual Assault in the First Degree as it used to convict him of Sexual Assault in the First Degree.

The State concedes the omission in the instruction, Answering Brief at 19, but argues that the error was harmless. We disagree with the State. In *State v. Correa*, 5

---

**4.** The trial court's instruction read:

A person commits the offense of Attempted Sexual Assault in the First Degree, if he intentionally engages in conduct which under the circumstances as he believed them to be constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of sexual assault in the first degree by attempting to knowingly subject another person to sexual penetration by strong compulsion.

There are two material elements to this offense, each of which the prosecution must prove beyond a reasonable doubt.
The two elements are:
1. The defendant intentionally engages in conduct;
2. This conduct under the circumstances as he believed them to be constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime of Sexual Assault in the First Degree.
Transcript 3/5/92 and 3/6/92 at 255–56.

186

Haw.App. 644, 646–47, 706 P.2d 1321, 1323 (1985), this court held that a "trial court must instruct the jury as to what specific facts it must find in order for it to find the defendant guilty of a particular count.... Otherwise, the instructions will not accomplish their purpose and will be prejudicially insufficient." (Citations omitted.)

On remand, therefore, the trial court must instruct the jury as to what specific facts it must find before it decides whether Defendant is guilty of Attempted Sexual Assault in the First Degree.

## IV.

### *The Trial Court's Refusal to Admit the Testimony of the Pastor of Defendant's Church*

Defendant's final point is that the trial court abused its discretion when it precluded testimony by the Reverend Aivao, the pastor of the church which Defendant attended. We disagree.

■ Pursuant to Hawai'i Rules of Evidence (HRE) Rule 404 (1985), evidence of a person's character or a trait of his character is generally not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. However, "[e]vidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same" may be offered into evidence. HRE Rule 404(a)(1).

■ At trial, defense counsel's offer of proof was that the Reverend Aivao would testify about how long he had known Defendant and in what capacity Defendant had been involved in his church. Tr. 3/4/92 at 212. Since character evidence is generally inadmissible under HRE Rule 404(a), the trial court, in view of Defendant's offer of proof, did not abuse its discretion in refusing to allow the Reverend Aivao to testify.

■ On appeal, however, Defendant claims that the Reverend Aivao would have testified that Defendant was a peaceful, non-violent person, evidence directly related to whether he would have sexually assaulted a young girl. O.B. at 30. We agree that under HRE Rule 404(a)(1) and the Rule 404 Commentary, testimony of Defendant's good and peaceful character would be admissible. *See State v. Faafiti*, 54 Haw. 637, 513 P.2d 697 (1973); A. Bowman, *Hawai'i Rules of Evidence Manual* § 404–2A, at 103 (1990).

On remand, therefore, the Reverend Aivao should be allowed to testify regarding these character traits of Defendant.

## CONCLUSION

For the foregoing reasons, we vacate the trial court's Judgment and Sentence, filed in the First Circuit Court on May 6, 1992, and remand for a new trial.