982 P.2d 904

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**William STALEY, Defendant–Appellant**

**No. 21841.**

Supreme Court of Hawai'i.

Aug. 31, 1999.

June C. Ikemoto, on the briefs, for the defendant-appellant William Staley.

Craig A. De Costa, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

█ The defendant-appellant William Staley (hereinafter, William) appeals from the judgment, guilty conviction, and sentence of the fifth circuit court, filed on August 6, 1998. William argues that: (1) the circuit court erred in granting the prosecution's motion in limine, which precluded any reference at trial regarding William's eligibility for Housing and Urban Development (HUD) assistance; (2) the jury instructions as read to the jury were prejudicial to him; and (3) there was insufficient evidence to support his conviction of theft in the first degree, pursuant to HRS § 708-830.5 (1993).[1] We agree with William's first point of error. Accordingly, we vacate the circuit court's judgment and remand for a new trial. Although our holding with respect to the foregoing point is outcome-dispositive of the present appeal, we address William's remaining arguments in order to provide guidance to the parties and the circuit court on remand. Cf. State v. Davia, 87 Hawai'i 249, 252, 953 P.2d 1347, 1350 (1998). Moreover, although not asserted by William as a point of error on appeal, we hold, based on our independent review of the record, that William's constitutional right to testify was violated. We address this point because it raises an issue that has the potential to recur in future cases. Cf. State v. Mahoe, 89 Hawai'i 284, 285, 972 P.2d 287, 288 (1998).

## I. BACKGROUND

It appears that, as of 1994, both William and his brother, Eugene Allen Staley, also known as Julio (hereinafter, Julio), were

---

1. HRS § 708-830.5 provides in relevant part that "[a] person commits the offense of theft in the first degree if the person commits theft ... [o]f property or services the value of which exceeds $20,000." "Theft," as defined in HRS § 708-830(2) (1993), occurs when "[a] person ... obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property."

homeless. Julio was a disabled man in his fifties, who suffered from acute and chronic alcoholism, neurodermatitis, alcoholic liver disease, and depression. In 1995, Julio appointed William to act with power of attorney regarding Julio's affairs with the County of Kaua'i Housing Agency (hereinafter, "the Housing Agency").

On October 20, 1997, William was indicted on one count of theft in the first degree, in violation of HRS § 708–830.5. On the same date, Julio was indicted on one count of theft in the first degree and one count of welfare fraud.[2] The brothers were indicted in connection with Julio's qualification for HUD and the County of Kauai's "Section 8" program, which subsidizes the rents of low-income families. It was alleged that William, in violation of the Section 8 program's requirements, inhabited the apartment paid for by Julio's Section 8 subsidy.

On March 19, 1998, the prosecution filed its Motion in Limine No. 1, moving the circuit court for:

1. An order precluding any and all questioning of the [prosecution's] witnesses regarding whether or not William Staley was eligible or could have qualified for HUD assistance.

2. An order precluding any and all reference at trial as to the eligibility or ineligibility of HUD assistance to William Staley, including but not limited to closing arguments and/or final summations.

The prosecution stated that its motion was "based upon" Hawai'i Rules of Evidence (HRE) Rules 401 (1993),[3] 402 (1993),[4] and 403 (1993).[5]

William filed an objection to the prosecution's motion, asserting as follows:

[William] argues that [evidence of William's qualification for HUD rental assistance] is extremely relevant in that it would be evidence which would tend to prove that defendant did not intend to defraud the State. Intent is a key element of the [prosecution's] case. The [prosecution] must prove beyond a reasonable doubt that [William] intended to deprive or deceive the County of Kaua[']i of property or services, thereby committing theft.

[William] must be given the opportunity to argue to the jury that such an intent makes no sense if, in fact, [William] would have qualified for HUD assistance in his own right or as another household member at his brother's residence.

Prior to trial, the circuit court orally granted the prosecution's Motion in Limine No. 1, accompanied by the following explanation:

The Court will grant the motion in limine with reference to whether [William] qualifies (inaudible) the Court doesn't feel that that is a question at this point. Okay. Whether or not [William] knew and did what he did can be taken as fraud[,] whether he qualified or not. Because the application was [William's], and if he went there[,] that would still be a violation of the rules and regulations whether he qualified or not[,] unless he made [an] application. Therefore, under the circumstances, the Court will grant the motion.

A three-day jury trial, at which William and Julio were codefendants, commenced on March 23, 1998. The prosecution elicited testimony from Helen Brun, the manager of the HUD and Housing Agency's Section 8 program, that in December, 1994, following Hurricane 'Iniki, Julio had applied for the Housing Agency's temporary disaster hous-

2. The charge of welfare fraud was dismissed prior to trial.

3. HRE Rule 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

4. HRE Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States

and the State of Hawai['i], by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

5. HRE Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

ing program. Julio noted both on his application with the Housing Agency and on a "personal declaration" that he was the sole member of his household. Julio also signed (1) a form indicating that he was to notify the Housing Agency and the landlord if any additions were made to the household "other than on a temporary basis," (2) a form indicating that he was to notify the Housing Agency if he lived anywhere else, and (3) a housing voucher "substantially similar" to the other forms. Brun testified that Julio was also orally instructed that he must live in the Section 8 apartment alone and must notify the landlord and the Housing Agency before having any overnight guests.

On February 16, 1995, Julio signed a rental agreement for apartment number 119A, located at 4770 Pepelani Loop, Sandpiper Village, in Princeville, Kauaʻi (hereinafter, "the apartment"). On February 10, 1995, William signed the tenant portion of a "responsibilities of the owner/landlord and responsibilities of the tenant" form, which appears to have set out responsibilities that were "the same" as those enumerated in the forms Julio had previously signed.[6] The lease became effective on February 16, 1995.

The Housing Agency paid Julio's monthly rental payments, beginning on February 16, 1995. From the commencement of Julio's lease through September 1997, the Housing Agency paid the landlord of the apartment a total of $20,607.00.

In November 1996, both Julio and William attended an appointment with Housing Agency assistant worker Earl Miyao, in order to determine whether Julio still qualified for assistance and assess Julio's needs. Miyao testified that, during a second appointment in December 1996, he orally explained Julio's responsibilities as a tenant. Miyao was unable to recollect whether William attended this meeting.

Several witnesses testified that William was often seen in the vicinity of the apartment. Ed Constantine, the resident manager at Sandpiper Village, testified that he observed William approximately three days a week, standing on the lanai of the apartment or working on vehicles in a grassy area next to the condominium complex's parking lot. Nanette Longsworth, the president of the Sandpiper Village owners' association, testified that she observed William two or three times a week in the kitchen, living room, or porch of the apartment. Raymond Vigno, William's employer at Zelo's Beach House restaurant (hereinafter, "Zelo's"), testified that he had been to dinner at the apartment several times as William's guest. Michael Moore, an employee at Zelo's and a resident of Sandpiper Village, testified that he observed William at Sandpiper Village "fairly frequently."

Thomas Vanderwende, a mobile intensive care technician stationed at the ambulance station at Sandpiper Village, testified that, when he found an unleashed puppy on the property, William claimed it as his. Timothy Walpole, another employee of the ambulance station, testified that, as early as February 1996, William came to his office several times, asking to use the phone.

Mary Anderson, an employee of Payroll Services Hawaii, testified that, when William was employed at Zelo's, he listed the apartment as his address. James Rabasa, a Kauaʻi Police Department police officer, testified that, following an assault during the summer of 1997, William gave the apartment as his address. Officer Rabasa further testified that William told him that Julio lived in Hanalei and William lived at the apartment.

After the prosecution rested its case, the following colloquy ensued outside of the hearing of the jury:

THE COURT: When is your client going on?

[William's Attorney]: We're going to discuss that over the evening, your Honor.

THE COURT: Whether or not he goes on. Okay. Bring your client, stand him up over there. . . .

Mr. Staley, [W]illiam Staley.

[William]: Yes, sir.

THE COURT: You understand that you have a right to testify as well as not to testify in this case. You understand?

---

6. Neither this form nor any of the other trial exhibits were included in the record on appeal.

. . . .

[William]: Yes, I do, your Honor.

THE COURT: Okay. And you understand that you should consult with your attorney whether you testify or not, but the ultimate decision you make is yours . . . to make. You understand that?

[William]: Yes, your Honor.

THE COURT: Okay. You understand that if you choose to testify[,] you will be treated like any other witness, subject to the same tests and cross-examination by the prosecutor's office. Likewise, they can comment on your testimony—

[William]: Yes . . . .

THE COURT:—and your biases or your interest in the case. If you choose not to testify, the jury will be instructed that they cannot consider the fact you do not testify against you in any way, nor can they consider that in their deliberation at any time. You understand that?

[William]: Yes, I do, your Honor.

THE COURT: Okay. So whether—but you understand, consult with your attorney, but whether or not you testify is a choice, [the] ultimate choice is yours. And if you choose to testify, even if your attorney says yes, I want you to testify, you should testify, if you choose to testify and you get convicted, you cannot later on say that I got convicted, you cannot later on say that I got convicted because my attorney told me to testify and I did. You understand that?

[William]: Yes, I do, your Honor.

THE COURT: Likewise, if you choose not to testify[,] and whether or not your attorney agrees with you or tells you not to testify[,] and you get convicted, you cannot later on come back and say that because my attorney told me to—not to testify[,] I didn't testify and, therefore, I want to complain and appeal. You cannot complain, you understand that?

[William]: Yes, I do, your Honor.

THE COURT: Okay. That is all.

At the close of the codefendants' case, the circuit court conducted the following colloquy outside of the hearing of the jury:

THE COURT: Your client going [to] testify?

[Julio's Attorney]: No.

THE COURT: Your client going [to] testify?

[William's Attorney]: No.

THE COURT: Anybody else (inaudible)?

Unidentified Voice: (Inaudible).

THE COURT: Okay. You want me to make sure?

Unidentified Voice: No need.

THE COURT: No need?

Unidentified Voice: We're fine. Yeah. It's adequate, yes, it is.

The evidentiary phase of the trial having concluded, the circuit court instructed the jury in relevant part as follows:

There are four material elements of the offense of theft in the first degree, each of which the prosecution must prove beyond a reasonable doubt. These four elements are . . . one, that *on or about the 16th of February 1995*, in the County of Kaua[ʻ]i, State of Hawai[ʻ]i, [Julio and William] obtained or exerted unauthorized control over the property of the County of Kaua[ʻ]i; and two, that [Julio and William] did so by deception; and three, that [Julio and William] did so with intent to deprive the County [of Kauaʻi] of the property; and four, that the value of the property exceeded $20,000.

. . . .

There are four material elements of the [included] offense of theft in the second degree, each of which the prosecution must prove beyond a reasonable doubt. These four elements are: one, that *on or about the 16th of February 1995 until the 15th day of October 1997*, in the County of Kaua[ʻ]i, State of Hawai[ʻ]i, [Julio and William] did obtain or exert unauthorized control over the property of the County of Kaua[ʻ]i. . . .

. . . .

There are four material elements of the [included] offense of theft in the third degree, each of which the prosecution must prove beyond a reasonable doubt. These

four elements are: one, that *on or about the 16th of February 1995 until the 15th day of October 1997,* in the County of Kaua['']i, State of Hawai['']i, [Julio and William] obtained or exerted unauthorized control over the property of the County of Kaua['']i. . . .

(Emphases added.) In the written instructions given to the jury, in contrast to what it had read orally, the circuit court defined the first element of theft in the first degree as follows: "[t]hat *on or about the 16th day of February, 1995, until the 15th day of October, 1997,* in the County of Kaua['']i, State of Hawai['']i, [Julio and William] obtained or exerted unauthorized control over the property of the County of Kaua['']i." (Emphasis added.)

After the circuit court read the jury instructions, the following exchange was held outside of the hearing of the jury:

THE COURT: Any objection to the manner in which the instructions were read?

. . . .

[William's Attorney]: No objection.

On March 25, 1998, the jury found William guilty as charged of theft in the first degree. On August 6, 1998, the circuit court filed its judgment, guilty conviction, and sentence, sentencing William to ten years of imprisonment. William filed a timely notice of appeal on August 17, 1998.

## II. *STANDARDS OF REVIEW*

### A. *Admissibility Of Evidence*

 [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.

> *Kealoha v. County of Hawaii,* 74 Haw. 308, 319, 844 P.2d 670, 676, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993). Where the evidentiary ruling at issue concerns admissibility based upon relevance, under [Hawai['']i Rules of Evi-

dence (HRE)] Rules 401 and 402, the proper standard of appellate review is the right/wrong standard. See *State v. Toro,* 77 Hawai['']i 340, 347, 884 P.2d 403, 410 (Haw.Ct.App.), *cert. denied,* 77 Hawai['']i 489, 889 P.2d 66 (1994).

*State v. Kupihea,* 80 Hawai['']i 307, 314, 909 P.2d 1122, 1129, (1996) (some brackets in original and some added). "Evidentiary decisions based on HRE Rule 403, which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." *Walsh v. Chan,* 80 Hawai['']i 212, 215, 908 P.2d 1198, 1201, (1995) (citing *Sato v. Tawata,* 79 Hawai['']i 14, 19, 897 P.2d 941, 946 (1995)). . . . " 'The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.' " *State v. Ganal,* 81 Hawai['']i 358, 373, 917 P.2d 370, 385 (1996) (quoting *State v. Furutani,* 76 Hawai['']i 172, 179, 873 P.2d 51, 58 (1994)).

*Tabieros v. Clark Equip. Co.,* 85 Hawai['']i 336, 350–51, 944 P.2d 1279, 1293–94 (1997) (citing *State v. Arceo,* 84 Hawai['']i 1, 11, 928 P.2d 843, 853 (1996)) (brackets in original).

### B. *Sufficiency Of The Evidence*

 "[V]erdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the [trier of fact's] findings." *Tsugawa v. Reinartz,* 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974). We have defined "substantial evidence" as "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *See, e.g., In re Doe, Born on January 5, 1976,* 76 Hawai['']i 85, 93, 869 P.2d 1304, 1312 (1994) (citations omitted) (brackets in original).

*Aga v. Hundahl,* 78 Hawai['']i 230, 237, 891 P.2d 1022, 1029 (1995). "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." *State v. Buch,* 83 Hawai['']i 308, 321, 926 P.2d 599, 612 (1996) (citation omitted).

"We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction." *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992), reconsideration denied, 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted).

*State v. Mattiello*, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (quoting *State v. Stocker*, 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999) (quoting *State v. Lee*, 90 Hawai'i 130, 134, 976 P.2d 444, 448, *reconsideration denied* (1999) (quoting *State v. Bautista*, 86 Hawai'i 207, 210, 948 P.2d 1048, 1051 (1997)))) (brackets in original).

### C. *Plain Error*

■ "We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). See also Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Maumalanga*, 90 Hawai'i 58, 63, 976 P.2d 372, 377, *reconsideration denied* (1999) (quoting *Davia*, 87 Hawai'i at 253, 953 P.2d at 1351).

### D. *Constitutional Law*

■ ... We answer questions of constitutional law "by exercising our own independent judgment based on the facts of the case." *State v. Trainor*, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996) (citations and internal quotation marks omitted); *State v. Lee*, 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996) (citation, internal quotation marks, and brackets omitted). Thus, we review questions of constitutional law under the "right/wrong" standard. *See State v. Toyomura*, 80 Hawai'i 8, 15, 904 P.2d 893, 900 (1995) (citing *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995), and *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995)); *State v. Baranco*, 77 Hawai'i 351, 355, 884 P.2d 729,

733 (1994) (issue whether defendant's constitutional right against double jeopardy would be violated unless indictment dismissed is question of law, reviewed under right/wrong standard); *In re [John] Doe, Born on January 5, 1976*, 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (whether speech is protected by first amendment to United States Constitution is applied to states through fourteenth amendment and by article I, section 4 of Hawai'i Constitution are questions freely reviewable on appeal).

*State v. Carvalho*, 90 Hawai'i 280, 285, 978 P.2d 718, 723 (1999) (quoting *State v. Quitog*, 85 Hawai'i 128, 139, 938 P.2d 559, 570 (1997) (quoting *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853)).

### III. *DISCUSSION*

### A. *The Circuit Court Reversibly Erred In Granting The Prosecution's Motion In Limine No. 1.*

■ William argues that the circuit court erred in granting the prosecution's Motion in Limine No. 1, inasmuch as "the evidence that [William] would have presented was that [he] did not intend to obtain unauthorized control over the property of the County of Kaua['']i by deception because he was qualified and eligible to receive financial services from the County of Kaua['']i on his own." Inasmuch as the excluded evidence was probative of, and therefore relevant to, William's state of mind, we agree.

■ "The due process guarantee of a fair trial under the fourteenth amendment to the United States Constitution and article 1, section 14, of the Hawai'i Constitution confers upon the accused in criminal proceedings 'a meaningful opportunity to present a *complete defense.*'" *State v. Pulse*, 83 Hawai'i 229, 246, 925 P.2d 797, 814 (1996) (quoting *State v. Matafeo*, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990)) (emphasis added). In the instant case, a key element of William's defense was that he had not intended to deprive the County of Kaua'i of any goods or services.

The circuit court appears to have granted the prosecution's Motion in Limine No. 1 in the belief that evidence of William's eligibility

for HUD assistance was irrelevant, pursuant to HRE Rule 401, *see supra* note 3, and HRE Rule 402, *see supra* note 4. Evidence of William's eligibility for assistance was relevant, however, to the presence or absence of the state of mind requisite to the offense with which William was charged. If William had believed that he was eligible for HUD assistance, he might have concluded that it was permissible to live in Julio's apartment. In other words, a jury might have inferred from William's eligibility for HUD assistance that he had not *intended* to defraud the County of Kaua'i, pursuant to HRS § 708–830, *see supra* note 1, but that he had believed that he was living in the type of housing with which the County of Kaua'i would have provided him, as an indigent person, in any case. Evidence of William's eligibility for HUD assistance was directly relevant, therefore, to William's requisite intent. Accordingly, the circuit court erred in its ruling that evidence of William's eligibility for HUD assistance was irrelevant under HRE Rule 401, and, therefore, inadmissible under HRE Rule 402. Inasmuch as the circuit court's error violated William's right to present a complete defense, *see Pulse*, 83 Hawai'i at 246, 925 P.2d at 814, it constituted reversible error.

The prosecution suggests that evidence of William's eligibility for HUD assistance would have confused the issues or misled the jury, pursuant to HRE Rule 403, *see supra* note 5. Even assuming, *arguendo*, that the evidence might have been confusing or misleading, we note that such a risk was greatly outweighed by the probative value of the evidence. Professor Bowman has stated:

> Probative value comprises not only relevancy but also need for the evidence. *State v. Clark*, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996); *Lau v. Allied Wholesale, Inc.*, 82 Hawai'i 428, 436, 922 P.2d 1041, 1049 (App.1996). Need assessment is dependent upon three variables: (a) the centrality or relative importance of the fact to be inferred; (b) the degree to which the fact to be inferred is actually disputed; and (c) the availability and quality of other evidence tending to prove the same point. *Walsh*, 80 Haw[ai'i at] 217, 908 P.2d [at]

1203 … (quoting the previous edition of this text).

Addison M. Bowman, *Hawai'i Rules of Evidence Manual* §§ 403–2B(2) at 121 (2d. ed.1998).

All three of the "need variables" articulated by Professor Bowman weigh in William's favor. William's state of mind was one of the material elements of the charge of theft in the first degree and was therefore of central importance to the case. William's state of mind was disputed hotly by the parties. Finally, inasmuch as neither William nor Julio testified, almost no evidence was presented to counter the prosecution's allegations regarding William's state of mind.

In any event, we believe it unlikely that evidence regarding William's eligibility for HUD assistance would have confused or misled the jury. In fact, the prosecution fails to articulate any manner in which the evidence might have been confusing or misleading. Evidence of William's eligibility for HUD assistance would not have tended to draw the jury away from the ultimate issue in the case. *Cf. Walsh*, 80 Hawai'i at 217, 908 P.2d at 1203 (observing that evidence was prejudicially confusing where it diverted a jury's attention from the central issue in the case). Perhaps the jury, upon hearing that William was eligible for HUD assistance, might have suspected that William was eligible to share *Julio's* benefits. This, however, was a point that could easily be clarified by the prosecution. Based on the foregoing analysis, we hold that the exclusion of evidence of William's eligibility for HUD assistance, on the basis of potential confusion under HRE Rule 403, constituted an abuse of discretion.

B. *The Circuit Court Did Not Commit Plain Error By Omitting From Its Oral Instruction To The Jury A Portion Of The Complete Jury Instruction Regarding Theft In The First Degree.*

██ William argues that he was prejudiced by the circuit court's jury instruction, as it was read to the jury, regarding theft in the first degree. Specifically, William argues that, inasmuch as the circuit court orally only instructed the jury regarding William's al-

leged theft "on or about the 16th of February 1995," thereby excluding the phrase "until the 15th day of October 1997," the instruction failed to apprise the jury adequately of the time period during which the offense was alleged to have occurred. Although we agree that the circuit court failed to read the complete instruction, we do not agree that this affected William's substantial rights.

 "As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error." *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citing *State v. Pinero*, 75 Haw. 282, 292, 859 P.2d 1369, 1372 (1993)). William concedes that he did not object to the circuit court's reading of the jury instruction regarding theft in the first degree.[7] Accordingly, the circuit court's error is not reversible unless William's substantial rights have been affected adversely. *See Maumalanga, supra* section II.C.

There is nothing in the record to suggest that the circuit court's failure to read the entire instruction affected William's substantial rights. This court has observed:

In general, *the precise time and date of the commission of an offense is not regarded as a material element.* ... In this regard, *[Territory v.] Low*, 35 Haw. [571,] 578 [ (1940) ], expressly reaffirmed the general rule, which was first enunciated in *Territory v. Crawford*, 18 Haw. 246, 247 (1907):

Ordinarily the time of the commission of an offense must be specifically alleged, but unless it is of the essence of the offense it need not be proved as alleged; it is sufficient to allege any time within the statute of limitations and before the finding of the indictment and to prove any other time within that period. If, however, the time is of the essence of the offense it must be proved in so far as

it is of the essence. For instance, if the offense is driving without lights during the hours of darkness it must be both alleged and proved to have been committed during such hours, although it is sufficient to prove that it was during any such hour even though different from the particular hour, if any, alleged. Similarly, if the offense is a violation of a Sunday law, its time must be alleged as on Sunday, but it is sufficient to prove that it was on some other Sunday than the one alleged.

See also HRS § 806–27 (1993) ("No indictment shall be held invalid or insufficient for want of the averment of any matter unnecessary to be proved[.]"); HRS § 806–34 (1993) ("In an indictment[,] the offense ... may be stated with so much detail of time, place, and circumstances and such particulars ... as are necessary to identify the transaction, to bring it within the statutory definition of the offense charged, to show that the court has jurisdiction, and to give the accused reasonable notice of the facts." (Emphasis added)); Hawai'i Rules of Penal Procedure (HRPP) Rule 7(d) ("The charge shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.... The charge need not contain ... any ... matter not necessary to such statement....").

 *Arceo*, 84 Hawai'i at 13, 928 P.2d at 855 (some brackets and ellipsis points added and some in original) (emphasis added). In the present case, it is self-evident that the one charge brought against William was predicated upon many months of rental payments. Inasmuch as the date on which the act was allegedly committed was not a material element of theft in the first degree, and in the absence of any alleged significance of the

---

7. In fact, William's attorney responded "[n]o objection" when asked by the circuit court whether he had any objection to the manner in which the jury instructions had been read. We note that this response by William's attorney likely waived the point on appeal. *See* Hawai'i Rules of Penal Procedure (HRPP) Rule 30 (1995) (providing that "[n]o party may assign as error the giving or the refusal to give, or the modification of, an instruction ... unless he [or she] objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he [or she] objects and the grounds of his [or her] objection"); *see also State v. Opupele*, 88 Hawai'i 433, 440–41, 967 P.2d 265, 272–73 (1998) (holding that defendant's failure to object at trial constituted waiver of issue on appeal).

omitted date, its exclusion could not have prejudiced William's substantial rights.[8]

Furthermore, we note that the circuit court provided the jury with sets of written instructions containing the complete instruction regarding theft in the first degree. The jury could not, therefore, have been led far afield by the circuit court's minor omission. *But cf.* discussion of *State v. Iosefa*, 77 Hawai'i 177, 880 P.2d 1224 (App.), *cert. dismissed as improvidently granted*, 77 Hawai'i 373, 884 P.2d 1149 (1994), *infra.*

William does not suggest that any constitutional right was violated by the misreading of the jury instruction. In fact, William points to *no* substantial right that might have been violated by the circuit court's omission. Actually, a misreading of the instruction could only have redounded to William's benefit: if the jury had construed the circuit court's exact words as read aloud, it would have had no choice but to conclude that (1) theft in the first degree was allegedly committed only on February 16, 1995, (2) based on the evidence adduced, a deprivation of $20,000.00 could not possibly have occurred on one day, and, therefore, (3) the offense of theft in the first degree could not have been proved.

William suggests that this case is similar to *Iosefa, supra.* In *Iosefa*, the Intermediate Court of Appeals (ICA), noting that "a written copy of the court's instructions cannot serve as a substitute for an oral charge," held that a trial court's failure to read an intended jury instruction constituted plain error. *Id.* at 184, 880 P.2d at 1231. The excluded jury instruction "explained the presumption of innocence and reasonable doubt precepts." *Id.* at 181, 880 P.2d at 1228. The ICA held that, under the circumstances, the failure to read the intended instruction jeopardized Iosefa's "federal constitutional right to due process and a fair trial." *Id.* at 183, 880 P.2d at 1230.

The trial court's error in *Iosefa*, therefore, affected the defendant's substantial rights. As noted above, the circuit court's error in the present matter did not rise to such a level. Accordingly, *Iosefa* is inapposite to the present matter.

■ Certainly, it is "important that the trial court instruct the jury in open court." *Id.* at 184, 880 P.2d at 1231. A trial court's minor omission in reading jury instructions cannot, however, rise to the level of plain error as a *per se* matter. In the present case, inasmuch as the circuit court's error did not affect William's substantial rights, we hold that it did not amount to plain error.

C. *There Was Substantial Evidence To Support The Jury's Verdict Of Theft In The First Degree.*

William contends that "there was insufficient evidence to establish the second, third, and last material element [as provided in the circuit court's jury instructions] to the offense of [t]heft in the [f]irst [d]egree." Inasmuch as there was credible evidence "of sufficient quality and probative value to enable a [person] of reasonable caution to support" the jury's verdict in the present matter, *see Mattiello, supra* section II.B, we do not agree.

1. *There was substantial evidence to support a finding that William obtained control over the property of the County of Kaua'i by deception and with intent to do so.*

■ William contends that the prosecution failed to present evidence adequate to support a finding that he obtained property belonging to the County of Kaua'i by deception or that he possessed the requisite intent

---

8. We are aware that the United States Supreme Court has recently held, pursuant to the sixth amendment to the United States Constitution, that a jury instruction that omits an *entire element* of an offense "does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, ___ U.S. ___, ___, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35(1999) (emphasis in original). Inasmuch as this issue is not before us in the instant case, we need and do not

reach it. We note, however, that this court will not hesitate to extend the protections of the Hawai'i Constitution beyond federal standards. *See, e.g., State v. Richie*, 88 Hawai'i 19, 42, 960 P.2d 1227, 1250 (1998); *Quitog*, 85 Hawai'i at 130 n. 3, 938 P.2d at 561 n. 3 (1997); *Arceo*, 84 Hawai'i at 28, 928 P.2d at 870; *State v. Lessary*, 75 Haw. 446, 453–54, 865 P.2d 150, 154 (1994); *State v. Aplaca*, 74 Haw. 54, 67 n. 2, 837 P.2d 1298, 1305 n. 2 (1992).

to do so. This court has stated, however, that,

> [g]iven the difficulty of proving the requisite state of mind by direct evidence in criminal cases, "[w]e have consistently held that ... proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the [defendant's conduct] is sufficient.... Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *State v. Sadino*, 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982) (citations omitted); *see also State v. Simpson*, 64 Haw. 363, 373 n. 7, 641 P.2d 320, 326 n. 7 (1982).

*State v. Mitsuda*, 86 Hawai'i 37, 44, 947 P.2d 349, 356 (1997) (quoting *State v. Batson*, 73 Haw. 236, 254, 831 P.2d 924, 934, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992) (footnote omitted)) (brackets and ellipsis points in original). In the present matter, Brun testified that William signed a "tenant responsibilities" form for Julio, which indicated that Julio would be the sole tenant of the apartment. Miyao testified that William accompanied Julio when Julio's qualification for Section 8 housing assistance was reassessed. Several witnesses testified that, between 1995 and 1997, they observed William regularly in or around the apartment. The jury could reasonably have concluded from the foregoing testimony (1) that William knew that only Julio was permitted to live in the apartment and (2) that, notwithstanding, William actually lived in the apartment. Accordingly, the jury could have inferred from this set of circumstances that William both deceived the County of Kaua'i and intended to do so. That being the case, there was substantial evidence to support a verdict of theft in the first degree.

**2.** *There was substantial evidence to support a finding that the value of the property at issue exceeded $20,000.00.*

■ William contends that the prosecution "failed to present substantial evidence that the property received from the County of Kaua[']i by deception exceeded $20,-000[.00]." William appears to base this argument on the circuit court's error in misreading the jury instruction regarding theft in the

first degree. *See supra* section III.B. William claims that, inasmuch as the jury was orally instructed only regarding theft in the first degree allegedly committed on February 16, 1995, on which date the County of Kaua'i paid Julio's rent of $283.00, there could not have been substantial evidence to sustain a verdict of theft in the first degree. We do not agree.

As noted above, substantial evidence is credible evidence "of sufficient quality and probative value to enable a [person] of reasonable caution to support" the jury's verdict. *See Mattiello, supra* section II.B. Regardless of how the jury was orally instructed in the present matter, and bearing in mind that the written instruction correctly characterized the time frame at issue, there was credible *evidence* to demonstrate that the value of the property taken by William exceeded $20,000.00. Brun testified that, between February 1995 and September 1997, the Housing Agency paid $20,607.00 in rent for the apartment. It follows that there was substantial evidence to support the jury's verdict of theft in the first degree.

**D.** *The Circuit Court Violated William's Right To Testify.*

■ Although not raised by William on appeal, our review of the record establishes that William's right to testify, as set forth in *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995), was violated. While the circuit court did engage in a colloquy with William regarding William's understanding of his right to testify, the circuit court failed to elicit an on-the-record waiver of William's right. The circuit court simply asked William's *attorney* whether William was "going [to] testify." "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b). *See also Mahoe*, 89 Hawai'i at 287, 972 P.2d at 290; *Cullen*, 86 Hawai'i at 8, 946 P.2d at 962; *Arceo*, 84 Hawai'i at 33, 928 P.2d at 875. Because the circuit court's error infringed upon William's constitutional right to testify, we address it as plain error.

"The decision to testify is ultimately committed to a defendant's own discretion[.]" [*State v.*] *Silva*, 78 Hawai'i [115,] 124, 890 P.2d [702,] 711 [ (App.1995) ]. *See also United States v. Moody*, 977 F.2d 1425, 1430 (11th Cir.1992), *cert. denied*, 507 U.S. 1052, 113 S.Ct. 1948, 123 L.Ed.2d 653 (1993) (citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983); *American Bar Assoc. Standards Relating to the Admin. of Criminal Justice*, Compilation p. 127 (1974)); *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2509–10, 53 L.Ed.2d 594 (Burger, J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury or testify in one's own behalf are ultimately for the accused to make"), *reh'g denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). Thus, "a defendant's personal constitutional right to testify truthfully in his [or her] own behalf *may not be waived by counsel* as a matter of trial strategy," *Moody*, 977 F.2d at 1431 (quoting *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir.1984), *cert. denied*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986)), but " 'may be relinquished *only by the defendant.*' " *Silva*, 78 Hawai'i at 123, 890 P.2d at 710 (quoting *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir.), *cert. denied*, 510 U.S. 1019, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993)).

*Tachibana*, 79 Hawai'i at 232, 900 P.2d at 1299 (emphases added) (some brackets added and some in original). A defendant's waiver of a constitutional right must be knowing, intelligent, and voluntary. *See, e.g., In re John Doe, Born on November 23, 1978*, 90 Hawai'i 246, 253, 978 P.2d 684, 691 (right to remain silent); *State v. Merino*, 81 Hawai'i 198, 219, 915 P.2d 672, 693 (1996) (right to counsel); *Tachibana*, 79 Hawai'i at 233–34, 900 P.2d at 1300–01 (right to testify); *State v. Hoey*, 77 Hawai'i 17, 33, 881 P.2d 504, 520 (1994) (Miranda rights); *State v. Young*, 73 Haw. 217, 220–21, 830 P.2d 512, 514 (1992) (right to jury trial); *see generally Brown v. Thompson*, 91 Hawai'i 1, 10 n. 9, 979 P.2d 586, 595 n. 9 (1999).

In *Tachibana*, this court cited with approval the Alaska Court of Appeals's observation that " 'if the [trial] court does not establish *on the record* that the defendant has waived his [or her] right to testify, it is extremely difficult to determine at a post-conviction relief hearing whether such a waiver occurred.' " 79 Hawai'i at 234, 900 P.2d at 1301 (citing *LaVigne v. State*, 788 P.2d 52, 55 (Alaska Ct.App.1990)) (emphasis added) (brackets in original). This court went on to hold that, "in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and *must obtain an on-the-record waiver of that right* in every case in which the defendant does not testify." *Tachibana*, 79 Hawai'i at 236, 900 P.2d at 1303 (emphasis added).

In the present matter, the circuit court did not elicit from William an on-the-record waiver of his right to testify. The record affords no means by which this court can discern whether William actually waived his right to testify or whether the decision was made entirely by his attorney. *See id.* at 234, 900 P.2d at 1301. Based on the rule established in *Tachibana*, we hold that the circuit court's failure to establish on the record that William's decision not to testify was made knowingly and voluntarily constituted plain error. *Cf. Davia*, 87 Hawai'i at 255, 953 P.2d at 1353 (holding that trial court's failure to establish on the record that defendant's no contest plea was knowing and voluntary constituted an abuse of discretion that amounted to plain error).

## IV. CONCLUSION

Based on the foregoing analysis, we vacate William's judgment, guilty conviction, and sentence, and remand the matter for a new trial.